352 So.2d 771 (1977)
Wilbert TABB, Sr., Plaintiff-Appellant
v.
LOUISIANA HEALTH SERVICES & INDEM. CO., Defendant-Appellee.
No. 6199.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1977.
Rehearing Denied December 14, 1977.
Writ Granted February 17, 1978.
*772 J. Minos Simon and Gerald J. Block, Lafayette, for plaintiff-appellant.
Cooper & Sonnier by Paul J. Hebert, Abbeville, for defendant-appellee.
Before HOOD, CULPEPPER and FORET, JJ.
FORET, Judge.
From a summary judgment dismissing his demands, plaintiff, Wilbert Tabb, Sr., appeals. Appellant cites the following as errors of the trial court:
1. The trial judge erred in considering appellee's affidavits and attachments when appellee's affidavits failed to meet the requirements of LSA-C.C.P. Arts. 966 and 967.
2. The trial judge was in error in apparently determining that no genuine issue of material fact existed in this litigation.
3. The trial judge erroneously ruled that appellee was entitled to summary judgment as a matter of law.

I.

AFFIDAVITS AND ATTACHMENTS
Plaintiff-appellant Tabb alleges that the affidavits and accompanying documents filed by defendant Blue Cross, in support of its motion for summary judgment, should not have been considered by the trial judge because some of the affidavits were untimely filed, and the attachments thereto were not certified as true and correct copies of that which they purported to be.
The first allegation, that of untimeliness, is moot. The hearing on the motion for summary judgment was originally scheduled for February 7, 1977. However, the hearing was postponed until March 7, 1977, upon agreement between appellant and appellee. Thus, the affidavit of Jude R. Gervais, dated February 4, 1977, although perhaps untimely for the first schedule hearing, was not untimely for the second. LSA-C.C.P. Art. 966.
Appellant Tabb contests the trial judge's consideration of the letter attached to the February 4, 1977, affidavit of Jude R. Gervais, and the copy of the insurance contract annexed to the December 30, 1976, affidavit of Hampton R. White. Appellant cites LSA-C.C.P. Art. 967 as authority for his proposition that documents attached to an affidavit must be certified or verified in order to be used at a hearing on a motion for summary judgment.
*773 LSA-C.C.P. Art. 967 specifies the conditions under which documents can be used to support, or contradict, a motion for summary judgment. It provides:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other orders as is just.
If it appears to the satisfaction of the court at any time that any of the affidavits presented pursuant to this article are presented in bad faith or solely for the purposes of delay, the court immediately shall order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees. Any offending party or attorney may be adjudged guilty of contempt. As amended Acts 1966, No. 36, § 1.
The February 4, 1977, affidavit of Jude R. Gervais was used to show that the Lafayette Parish Sheriff's Department, rather than Blue Cross, had terminated the group hospitalization and medical policy which existed as between them. The affidavit was made on personal knowledge: Mr. Gervais was the finance officer of the Lafayette Parish Sheriff's Department, and was familiar with the contract of insurance. In his affidavit, Mr. Gervais swore that the attached letter was a true and correct copy of that letter which he mailed to Blue Cross on March 27, 1972.
". . . On March 27, 1972, he wrote a letter, a copy of which is attached hereto and made a part hereof, which effectively terminated the coverage of this group hospitalization and medical policy as of March 31, 1972." (Tr., pg. 46)
The December 30, 1976, affidavit of Hampton R. White was submitted to introduce a sworn copy of the contract of insurance as between Blue Cross and the Lafayette Parish Sheriff's Department. It fulfilled all of the requirements of LSA-C.C.P. Art. 967. It was an affidavit of one attesting to his personal knowledge. White was the staff attorney and head of the Contracts Maintenance Department of Blue Cross. In his affidavit, White swore that the attached insurance policy was a true and correct copy of the one over which this litigation arose.
". . . That the attached is what the Company's records show to be a true and correct copy of the kind of Hospital and Surgical-Medical Group Contract No. 4113, and any riders and endorsements issued to Lafayette Parish Sheriff Department by Blue Cross of Louisiana/Louisiana Health and Indemnity Company." (Tr., pg. 48)
We find that the affidavits and accompanying documents were both timely filed and were executed in compliance with LSA-C.C.P. Art. 967. The trial judge properly admitted and considered same in his determination.

II.

SUMMARY JUDGMENT
LSA-C.C.P. Art. 966 specifies under what instances the summary judgment may validly be rendered. It provides:

*774 ". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." (Emphasis added.)
The jurisprudence thereunder has announced the following rules of law to govern the disposition of motions for summary judgment.
"All doubt concerning disputes as to a material fact must be resolved against granting the motion for summary judgment and in favor of trial on the merits. Summary judgment is not to be used as a substitute for trial. Odom v. Hooper, 273 So.2d 510 (La., 1973)." Walker v. Graham, 343 So.2d 1171 (La.App. 3 Cir. 1977).
"The fact that a litigant is unlikely to prevail on the merits is not sufficient to sustain a motion for summary judgment. Warden v. Southwest Louisiana Hospital Ass'n., 300 So.2d 590 (La.App. 3 Cir. 1974)." Wick v. Sellers, 301 So.2d 744, 746 (La.App. 3 Cir. 1974).

A. QUESTION OF MATERIAL FACT
In this case, appellant Tabb, in his petition, alleged that on November 7, 1970, while performing his duties as a sheriff's deputy in investigating a burglary, he was shot; that he became a paraplegic as a result; that on the day of the shooting, he was a designated beneficiary under an accident and health insurance policy issued by Blue Cross; that on March 31, 1972, Blue Cross terminated said insurance policy; that the claims sought originated from the November 7, 1970, shooting, and that Blue Cross is thus liable therefor. In answer to a request for admission of facts, Blue Cross admitted that appellant Tabb was the beneficiary of an accident and health insurance policy issued by it to the Lafayette Parish Sheriff's Department, and that the said Sheriff's Department itself terminated the policy on March 31, 1972.
Appellant Tabb argues that a question existed as to which party, Blue Cross or Lafayette Parish Sheriff's Department, terminated the policy, and that there is therefore a dispute as to material fact. Appellant Tabb was an insured because he was an employee of the Lafayette Parish Sheriff's Department. He did not personally execute the insurance contract with Blue Cross. He did not have personal knowledge of the identity of the party terminating the policy. His affidavit thus could not be used. That of Jude R. Gervais, the finance officer of the Sheriff's Department, was the only sworn statement of personal knowledge as to which party terminated the policy.
The only issues existing were those of law. Appellant and appellee agreed that Blue Cross had formerly issued an accident and health insurance policy to the Lafayette Parish Sheriff's Department; that said insurance contract was terminated on March 31, 1972, and that Blue Cross refused to pay for any hospital services rendered after that date. The only question remaining was whether or not the insurance policy covered the claim of appellant Tabb. A determination of same required only a review of the provisions of the policy and a construction to be placed thereupon.

B. JUDGMENT AS A MATTER OF LAW.
Plaintiff-appellant Tabb contends that as the accident for which the hospital services, for which he seeks compensation, occurred during the term of the insurance contract, the subsequent cancellation by defendant-insurer, Blue Cross, can have no effect as regards those services. As authority for that proposition, he cites the case of Militello v. Bankers Life & Cas. Co., 141 So.2d 454 (La.App. 4 Cir. 1962). In the alternative, he alleges that Article XI(d) of the insurance contract was against public policy and should not be considered as a part of the insurance contract.
There are two provisions of the insurance policy which require construction so that a disposition of this case can be made. The first is Article IV, wherein are enumerated those services for which Blue Cross was obligated to its insured. Those services included:

*775 (a) Room and Board allowance;
(b) Use of operating room;
(c) Anesthesia material;
(d) Laboratory examinations;
(e) Oxygen and its administration;
(f) Basal metabolism tests;
(g) Medical and surgical supplies;
(h) Surgical dressings, plaster casts and ordinary splints;
(i) All drugs and medicines . . .
(j) Electrocardiograms;
(k) X-ray examinations and X-ray therapy;
(l) Physical therapy;
(m) Administration of anesthesia by hospital employee;
(n) Intravenous injections and solutions;
(o) Transfusion fee and equipment;
(p) Electroencephalograms;
(q) Electroshock therapy;
(r) Traction;
(s) Use of intensive care unit, heart unit and burn unit. . . . (Tr., pp. 55, 77)
The other was Article XI(d) which provided:
"The benefits under this Contract shall be provided to the extent practicable in the form of services, and payment therefor by or on behalf of the Company shall constitute a complete discharge of the obligation of the Company to the extent of the services rendered in accordance with the terms and conditions of this contract.
. . . . .
(D) No Subscriber shall be entitled to benefits for any services received after termination of individual coverage or of this Contract regardless of the cause of termination." (Emphasis added.) (Tr., pg. 60)
The language of the above two provisions of the insurance contract is clear and unambiguous. The services included within the insurance policy are specifically stated. Most of them would be provided to a patient as they were prescribed by his treating physician. The term "received", according to its usual and ordinary definition, means "taken", "acquired", or "experienced". Article XI(d) means that the insurance policy covers those services received by the patient. Blue Cross would only be responsible for those services provided to the patient during the existence of the policy.
The case of Militello v. Bankers Life & Cas. Co., supra, cited by appellant, is inappropriate for the disposition of this case. In that case, suit was instituted for benefits provided under a hospital indemnity, and a preferred family hospital-surgical, insurance contract. The former insurance policy covered indemnity for sickness contracted during the existence of the policy; the latter insured against certain hospital and surgical expenses caused by
"sickness, illness, or disease which is contracted and begins and causes loss beginning while the policy is in force. . . ."
The Fourth Circuit Court of Appeal ruled that a cancellation, effective after the date of illness or disease, would not affect an already-existing claim.
In the case of Oceanonics, Inc. v. Petroleum Distributing Co., La., 292 So.2d 190 (1974), the Louisiana Supreme Court was confronted with a general liability insurance policy in which a provision similar to Article XI(d) in this case was included. The Court held:
". . . we cannot say that public policy dictates a judicial declaration that general liability insurance policies providing completed operations and products liability coverage cannot exclude coverage for damage arising from an occurrence (which is defined as an accident "which results, during the policy period, in bodily injury or property damage") after the policy period, although the delictual act which gave rise to the occurrence took place during the policy period." Oceanonics, Inc. v. Petroleum Distributing Co., supra, at page 192.
Costs of this appeal are assessed against plaintiff-appellant, Wilbert Tabb, Sr.
AFFIRMED.