400 So.2d 1103 (1981)
George PETERS, Husband of and Doris Peters, and George Peters Enterprises
v.
LIFE GENERAL SECURITY INSURANCE COMPANY, a Subsidiary of Louisiana General Services, Inc.
No. 13977.
Court of Appeal of Louisiana, First Circuit.
April 13, 1981.
*1104 Keith M. Whipple, Houma, for plaintiff and appellee.
William C. Shockey, Baton Rouge, for defendant and appellant.
Before ELLIS, COLE and WATKINS, JJ.
ELLIS, Judge:
This is a suit by George F. Peters, Sr., doing business as George Peters Enterprises, against Life General Security Insurance Company, for benefits allegedly due under a group hospital policy. After trial on the merits, judgment was rendered in favor of plaintiff for $26,150.08 in medical benefits, $26,150.08 as a penalty, $7,500.00 as attorney's fees, and $2,000.00 as death benefits. Defendant has appealed.
The record reveals that plaintiff was the owner of George Peters Enterprises, an accounting, tax and bookkeeping firm. On July 12, 1976, plaintiff applied to defendant *1105 for a group hospitalization and group life insurance policy for the employees of George Peters Enterprises, including himself. The insurance was placed in effect as of July 15, 1976. At that time, there were three employees in the group, including Mr. Peters, who was the only member of the group to take insurance covering his dependents. During the life of the policy, the group was never greater than four, and at no time did more than half of the members with eligible dependents elect to have the insurance cover their dependents.
In October, 1977, Mrs. Doris Peters, plaintiff's wife, was found to have cancer, and began a prolonged period of treatment, and hospitalization, which ended with her death in November, 1979, during which time, considerable medical expenses were incurred.
Life General paid all claims for medical expenses relative to Mrs. Peters' illness through the end of the policy period, July 15, 1978. However, on August 9, 1978, it notified Mr. Peters as follows:
"With reference to Dependent Life and Health, all such coverage will cease midnight, September 14, 1978, as your agreement with the Blue Flame Trust specifies that at least 60% of all eligible employees with eligible dependents must be insured with respect to those eligible dependents. LGS will not honor claims incurred on or after midnight September 14, 1978."
Thereafter, Mr. Peters attempted, without success, to have the dependent insurance continued. He paid all premiums due on September 15, 1978, and then ceased payment. On December 4, 1978, he was notified by mail that, because of non-payment of premiums, all coverages for the group were terminated effective midnight, October 14, 1978.
This suit was filed on November 16, 1978, seeking to have the policy declared to be in full force and effect. After Mrs. Peters' death the petition was amended to pray for all medical expenses due under the policy together with penalties and attorneys' fees.
The policy herein was for a term of one year, with a provision for automatic renewal on the anniversary date unless the policyholder properly notified the insurer that the policy was to be terminated. Premiums were paid monthly on the 15th day of each month. The policy further provided that it would terminate on the failure of the policyholder to make any premium payment when due, subject to certain grace period provisions, and that no benefits would be paid after termination of the policy for non-payment of premiums.
The insurer further reserved the right to terminate the insurance relative to dependents "if less than 60% of the eligible employees having eligible dependents have been reported for insurance with respect to such dependents."
As pointed out above, the defendant insurer attempted to terminate plaintiff's dependent coverage on the ground that less than 60% of the eligible employees with eligible dependents were insured with respect to those dependents. Of course, as pointed out above, this condition had persisted throughout the life of the policy, with the knowledge and acquiescence of the defendant. We do not believe that it can form a valid basis for termination of the dependent coverage after the inception of Mrs. Peters' illness.
Defendant further contends that, under the express terms of the policy, no benefits need be paid if any premium is not paid on its due date. It is undisputed that no premiums were paid after September 15, 1978, and that all covered medical expenses were paid through October 14, 1978, the day on which defendant contends that Peters' participation in the policy was terminated. This contention is also without merit. In Wharton v. Louisiana Hospital Service, Inc., 183 So.2d 133 (La.App. 1st Cir. 1966), in dealing with a situation in which premiums were not paid after an illness had arisen while the policy was in effect, we said:
"However, once liability of the insurer for an assumed or covered risk is established, the obligation to continue payment of benefits in accordance with the policy provisions governing same, becomes fixed and constant. Once the liability of the *1106 insurer attaches, or, stated otherwise, upon maturity of the insured's claim while the contract is in force, public policy demands that the vested right of the insured to uninterrupted receipt of benefits be unaffected by subsequent termination as will hereinafter appear."
We think that this case is governed by the above legal and policy considerations, and that plaintiff is entitled to all benefits provided by the insurance policy, until the death of his wife, despite the policy provisions to the contrary.
As to the penalties, defendant argues that the trial court applied the wrong statute in assessing the amount thereof. The trial judge assessed a penalty of 100% of the amount due under R.S. 22:657, which applies to health and accident policies. Defendant argues that a hospitalization policy is not a health and accident policy, and that the 12% penalty prescribed by R.S. 22:658 is applicable, citing Tabb v. La. Health Services & Indem. Co., 361 So.2d 862 (La.1978), which so holds. However, the Tabb case has been reversed as to that holding in Rudloff v. Louisiana Health Services & Indem., 385 So.2d 767 (La.1980), and defendant's argument is without merit.
Defendant argues strenuously that it should not be assessed penalties since it was acting in accordance with the clear and unambiguous terms of its policy, and that its conduct could not be said to be arbitrary. Once again, we must disagree. In attempting to use a condition which had existed for the life of the policy as an excuse to avoid payment of an existing and vested claim, defendant has exhibited obvious bad faith, and we find their conduct in that respect to be so arbitrary as to subject them to the penalties provided by R.S. 22:657.
For the same reasons, plaintiff is entitled to attorney's fees under R.S. 22:657. Defendant further argues that the award of $7,500.00 is excessive and not supported by the record. The only evidence in the record is the testimony of a practicing attorney that the one-third contingent fee charged by plaintiff's attorney was reasonable. There is no evidence in the record as to the amount of time spent on the case by plaintiff's attorney, and the expert witness did not review plaintiff's attorney's file. There is, therefore, no evidence as to the reasonable value of the services actually performed on plaintiff's behalf by his attorney. The trial judge stated that he was not familiar with fees charged by attorneys for services in cases of this kind.
The record shows that plaintiff's attorney engaged in correspondence with defendant before the suit was filed; filed the petition and two supplemental petitions; engaged in the one day trial of the case, at which a large number of exhibits were filed, indicating substantial pre-trial preparation; filed a post trial memorandum; argued and successfully opposed defendant's motion for a new trial; and successfully briefed and argued the case in this court. Under those circumstances, we find the fee of $7,500.00 to be reasonable.
Since defendant assigns no further specifications of error, the judgment appealed from is affirmed, at defendant's cost.
AFFIRMED.