433 So.2d 367 (1983)
Sam V. CATALDIE, Jr., Individually and as Administrator of the Estate of his minor child, Amie Cataldie, Plaintiff-Appellee,
v.
LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY, Defendant-Appellant.
No. 83-50.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
Rehearing Denied July 14, 1983.
*368 Trimble, Randow, Percy, Smith, Wilson & Foote, Lon P. Wilson, Alexandria, for defendant-appellant.
Antoon, Dalrymple & Beck, Joseph T. Dalrymple, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, FORET and CUTRER, JJ.
DOMENGEAUX, Judge.
This suit was brought by Sam V. Cataldie, Jr., individually and as administrator of the estate of his minor child, Amie Cataldie, seeking a declaratory judgment on a policy of hospitalization insurance issued by the defendant, Louisiana Health Service and Indemnity Company. Pursuant to a stipulation of facts as agreed upon by the parties, the case was submitted to the trial court which subsequently rendered judgment in favor of the plaintiff. The defendant thereafter perfected this appeal.
The facts of this case are not in dispute. The plaintiff and defendant entered into a non-group family hospitalization and surgical medical contract, which policy went into effect on September 1, 1978. At the inception of the policy, it provided major medical coverage in the amount of $250,000.00 with a deductible of $100.00 and a quarterly premium of $244.67. As of March 15, 1981, the major medical deductible had increased to $300.00 with a $50.00 hospital deductible, and the quarterly premium had increased to $330.96. As of January 1, 1982, premiums were again raised to $346.02 per quarter. The premium payable on a single coverage policy as of that date was $161.73 per quarter.
Amie Cataldie was diagnosed as suffering from brain cancer in April of 1981, and treatment of the cancer was commenced thereafter. This treatment was started well after the inception of the contract between the plaintiff and the defendant under which Amie Cataldie was insured.
The defendant timely paid all benefits for services rendered to the plaintiff's daughter prior to May 15, 1982, the sum of which totalled $41,266.21. The amount of premiums paid by the Cataldies prior to that date totalled $4,189.08.
However, on May 15, 1982, the defendant substantially altered the terms of the plaintiff's policy, increasing the quarterly premium to $614.64, increasing the deductible to $5,000.00, and reducing major medical coverage to $20,000.00 lifetime coverage with maximum yearly coverage of $10,000.00. The validity of the notice given by the defendant to the plaintiff of the policy amendment and premium increase is not disputed. On June 1, 1982, apparently because of the drastic modification of the insurance contract by the defendant, the plaintiff cancelled the family coverage policy, but left Amie Cataldie covered under a single coverage policy.
Shortly after the amendment to the policy, the plaintiff instituted this suit for a declaratory judgment, seeking to determine whether or not the defendant could, upon giving timely and proper notice, amend or *369 cancel the coverage provided, and if so, whether this amendment or cancellation of coverage would apply to those services rendered to Amie Cataldie after the effective date of the amendment or termination of the policy. Judgment was rendered in favor of the plaintiff, thereby reinstating all health care benefits provided under the health and accident insurance policy between the plaintiff and defendant as it existed on the date of its inception (August 14, 1978, according to the judgment), with reinstatement of the initial premium as well (listed in the judgment as $246.13 per quarter).
The defendant makes several specifications of error on appeal, all but one of which are essentially undisputed by the plaintiff. Both parties are in agreement that the trial judge erred in specifying that the original insurance contract went into effect on August 14, 1978, rather than September 1, 1978, as stipulated by the parties. They also agree that the judge erred in stating that the initial premium was $246.13 per quarter rather than $244.67 per quarter. Furthermore, both parties recognize that the trial judge erred in reinstating the terms and conditions of the policy as it existed at its inception, when Amie Cataldie's illness was not diagnosed until April, 1981. Finally, the plaintiff and defendant acquiesced in the fact that the trial judge erred in apparently reinstating the insurance policy as to the entire Cataldie family when no member of that family other than Amie Cataldie was suffering from an illness or disease as of May 15, 1982, the day that the policy was substantially modified.
We agree that the district court was in error for the reasons specified, supra. Thus, we shall herein amend the judgment of the district court accordingly.
The key area of disagreement between the plaintiff and the defendant concerns whether or not the defendant had the right to terminate or modify the plaintiff's insurance policy at its own option upon giving the plaintiff timely notice of its intentions; and if so, whether or not expenses for services rendered to the plaintiff's daughter after the effective date of termination or modification of the policy pursuant to treatment of an illness contracted by her prior to such date were covered by the prior policy. We find herein that for reasons of public policy, the defendant was required to continue to provide coverage after May 15, 1982, under the terms of the insurance policy as it was written prior to that date, but only for those medical expenses incurred by Amie Cataldie pursuant to her ongoing treatment for cancer.
It is a well-settled legal principle that a valid insurance policy is a contract between the insured and the insurer, and as is true of all other contracts, it is the law between them. La.C.C. Article 1901; Hall v. National Life and Accident Insurance Company, 383 So.2d 74 (La.App. 3rd Cir. 1980). Where the language of the policy is free and clear of ambiguity, it constitutes the contract between the parties and must be enforced as written. In addition, insurers have the same rights as individuals to limit their liability and to impose whatever conditions they please upon their obligations under the policy in the absence of conflict with laws or public policy. Hall, supra.
La.R.S. 22:212(8) allows a policy of health and accident insurance to be subject to cancellation at the option of the insurer provided that "... there shall be prominently printed on the first page of such a policy a statement so informing the policyholder." The policy in question clearly provided on the first page that "The plan or the Member may cancel the Contract with 30 days written notice." This language is clear and unambiguous, and is in compliance with the above statutory provisions. The defendant maintains that if it can cancel a policy of hospitalization insurance upon giving notice, that it can certainly modify the policy upon providing the same notice. There is basically no disagreement between the plaintiff and the defendant on this particular issue.
The paramount issue in this case, therefore, is not whether the insurer has the right to cancel or modify a policy of *370 insurance simply by giving proper notice. Rather, the issue is whether or not an insurer may arbitrarily and without providing just cause terminate a hospital expense policy and thereby refuse to pay expenses for medical services which are rendered thereafter to a person covered by such policy pursuant to a continuing illness for which the insurer had been previously paying benefits up to the time of the termination of the insured's policy.
Our research has disclosed a number of cases in which a hospitalization policy was terminated by the insurer for valid and specific reasons, and the insurer's refusal to pay for medical services rendered to the insured thereafter was upheld by the court as being in compliance with law and public policy. In most of these cases, policies were cancelled by the insurers either because the insureds had failed to pay premiums or because the insureds had ceased to become eligible under group hospitalization plans due to termination of employment or substitution of group insurance plans by their employersall being perfectly valid and justifiable reasons for cancellation of the policies. However, we have been unable to locate any decision in which an insurer cancelled a hospitalization policy simply by unilaterally exercising an option to do so without giving a justifiable reason for so acting. Thus, the issue at hand is apparently res nova in our jurisprudence.
The defendant cites Tabb v. Louisiana Health Service & Indemnity Co., 352 So.2d 771 (La.App. 3rd Cir.1977), reversed on other grounds 361 So.2d 862 (La.1978), and Matherne v. Prudential Insurance Co., 362 So.2d 823 (La.App. 3rd Cir.1978), as authority for the proposition that it is not liable to provide benefits to the plaintiff for expenses incurred after termination of the policy in question, regardless of the cause of termination. However, both of these cases are distinguishable from the case at hand. In Tabb, the group policy covering the plaintiff was terminated by his employer, not by the defendant insurance company, while in Matherne, coverage of the plaintiff under a group hospitalization policy was cancelled when the plaintiff terminated his employment. Neither case involved a situation in which the insurance company terminated coverage at its own whim and fancy.
The plaintiff, on the other hand, cites the decisions of the First Circuit in Peters v. Life General Security Insurance Company, 400 So.2d 1103 (La.App. 1st Cir.1981), writ denied, 403 So.2d 70 (La.1981), and Wharton v. Louisiana Hospital Service, Inc., 183 So.2d 133 (La.App. 1st Cir.1966), writ refused, 184 So.2d 734 (La.1966), in order to justify recovery from the defendant of benefits for services rendered after the termination of the policy in dispute. In Wharton, the Court stated:
"However, once liability of the insurer for an assumed or covered risk is established, the obligation to continue payment of benefits in accordance with the policy provisions governing same, becomes fixed and constant. Once the liability of the insurer attaches, or, stated otherwise, upon maturity of the insured's claim while the contract is in force, public policy demands that the vested right of the insured to uninterrupted receipt of benefits be unaffected by subsequent termination as will hereinafter appear."
This language was specifically cited and relied upon by the Court in Peters in order to allow the plaintiff to recover all benefits provided by the insurance policy even though the plaintiff had ceased to pay premiums on the policy.
Louisiana Health Service and Indemnity Company seeks to distinguish the Wharton and Peters decisions from the situation at hand in that the insured event in Wharton was the contracting of an illness covered by a "dread disease endorsement" on a health and accident policy, while the insured event in this case was the rendering of services giving rise to medical expenses. While the defendant's distinction may seem valid, we take cognizance of the fact that in Peters there was no mention of whether or not the hospitalization policy at issue strictly covered the contraction of a specific "dread disease" or simply covered the incurring of medical expenses by the insured; however, *371 the court in Peters still required the insurer to continue providing benefits to the insured even after the plaintiff had discontinued the payment of premiums to defendant. We find this ruling particularly noteworthy in light of the fact that the plaintiff's case in Peters was unquestionably weak in comparison to that of Sam Cataldie in this case, since the insurer in Peters had provided a valid reason for discontinuing coverage, that reason being the nonpayment of premiums, while the defendant in this case gave no reason whatsoever for the massive alteration of the plaintiff's policy.
While the hospitalization policy entered into by Louisiana Health Service and Indemnity Company and Sam Cataldie did not specifically provide that coverage under the policy would attach upon the contraction of an illness such as cancer by the plaintiff or a member of his family, we feel that public policy mandates that coverage of Amie Cataldie should have been continued under the terms of the policy as they existed immediately prior to the defendant's modification of the contract on May 15, 1982. To hold otherwise would be to sanction the unilateral cancellation of such a policy by an insurer at any time, without requiring it to provide any reason whatsoever, subject merely to the condition that the insurer give timely notice of such termination. It could allow an insurer to cancel a policy after the insured had paid premiums for years, simply because the insured had contracted a catastrophic illness, and thereby had become too onerous a client. Louisiana Health Service and Indemnity Company could theoretically never face exposure for more than 30 days under its interpretation of the policy, regardless of any provisions guaranteeing major medical and hospitalization benefits to the insured. Public policy is offended when an insurance company is allowed to effectively circumvent the terms of a hospitalization policy at its own caprice simply because an insured risk has occurred. Such a result totally destroys the purpose of having insurance, and is completely incongruous and unconscionable.
However, this holding is necessarily limited only to those situations in which an insurer arbitrarily and without just cause terminates a hospitalization policy, provided that the policy allows the insurer to cancel the contract. The holding is further limited to those situations in which benefits were being paid immediately prior to cancellation. In no way do we hold herein that an insurer may never cancel a hospitalization policy once liability to pay medical expenses attaches, since an insurer may so cancel the policy for just cause (e.g., nonpayment of premiums by the insured, termination of employment of a person covered by a group policy during such employment, termination of the policy by the insured or by his employer, etc.), so long as the policy contains provisions allowing for its cancellation.
Furthermore, we do not hold that an insurer may never unilaterally amend the provisions of a policy of insurance without providing a justifiable reason for so acting. Reasonable adjustments in premiums or benefits by the insurer due to ordinary and expected factors and influences are perfectly proper provided that such adjustments are made in accordance with express policy provisions. Rather, we intend for this holding to apply only to those situations in which the insurer either terminates the policy of hospitalization insurance or makes alterations to the policy which are so drastic that it would be unreasonable for the insured to keep the policy in force. In such circumstances (as in the case at hand), we feel that the actions of the insurer constitute an effective termination of the policy by the insurer and require it to provide the insured with reasons which demonstrate that it has just cause for cancellation, rather than mere notice of cancellation.
Finally, we do not hold herein that the defendant was required to keep the policy in force as to all members of the plaintiff's family covered by the policy prior to May 15, 1982. Rather, we merely hold that the insurer was required to keep the contract in force solely as to Amie Cataldie, since she was the only person receiving benefits for medical expenses at the time the policy was altered. Public policy is not offended when persons who are not incurring ongoing *372 medical expenses are terminated from a hospitalization policy, provided that proper notice is given to such parties to afford them the opportunity to seek other insurance. Accordingly, the premiums due after May 15, 1982, should be adjusted to reflect the premium in effect on single coverage policies as of that date, $161.73 per quarter.[1]
For the above and foregoing reasons, the judgment of the trial court is recast as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that judgment be rendered herein in favor of Sam V. Cataldie, Jr., individually, and as administrator of the estate of his minor child, Amie Cataldie, and against defendant Louisiana Health Service and Indemnity Company, ordering that health care benefits provided under the contract of hospitalization insurance as it existed prior to May 15, 1982, be reinstated as to Amie Cataldie only, with an adjustment in premium rates from $346.02 per quarter, the premium payable as of January 1, 1982, on the family hospitalization policy of Sam V. Cataldie, to $161.73 per quarter, the premium that would have been payable as of January 1, 1982, on a single coverage hospitalization policy on Amie Cataldie.
All costs at trial and on appeal are cast against Louisiana Health Service and Indemnity Company.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, RECAST, AND RENDERED.
FORET, J., concurs in the result.
NOTES
[1] While the parties argue that the district judge should have reinstated premiums retroactive to April, 1981, when Amie was first diagnosed as having cancer, we deem it more appropriate to reinstate the premium as it existed on single coverage policies after January 1, 1982, since the increases in premium rates after April, 1981, on the policy in question were justifiable.