535 So.2d 393 (1988)
Nolan A. GUIDRY, Plaintiff-Respondent,
v.
SHELTER INSURANCE COMPANY, Defendant-Relator.
No. W88-164.
Court of Appeal of Louisiana, Third Circuit.
August 18, 1988.
Juneau, Hill, Judice & Adley, P.L.C., Kathleen F. Drew, Lafayette, for defendant/relator.
Koury & Koury, Joseph Koury, Lafayette, for plaintiff/respondent.
Before STOKER, DOUCET and KING, JJ.
KING, Judge.
This court granted supervisory writs in this case following the trial judge's denial of defendant's Motion for Summary Judgment.
*394 The issue presented for review is whether a non-group health insurance policy issued by defendant provides coverage for all of plaintiff's medical expenses related to an accident occurring during the policy period but incurred after the lapse of the policy for non-payment of premiums.

STATEMENT OF THE CASE
On December 13, 1982, in consideration of a monthly premium of $108.86, Shelter Insurance Company (hereinafter defendant) issued to Nolan A. Guidry (hereinafter plaintiff) a non-group accident and medical benefits policy (hereinafter the policy) which provided coverage for plaintiff and his family. The policy went into effect November 24, 1982 and, under its terms, was renewable "by the timely payment of each premium" as it became due.
On June 10, 1983, plaintiff was involved in an automobile accident in St. Martin Parish, Louisiana. As a result of this accident, plaintiff suffered numerous injuries and incurred medical expenses in excess of $12,000.00, which were submitted to defendant for payment under the policy. Due to his injuries, plaintiff was unable to return to his former employment and became unable to pay the monthly premiums. Consequently, the policy issued by defendant to plaintiff lapsed on December 24, 1983 for non-payment of premium.
Prior to the end of the benefit period of plaintiff's policy, which was January 1, 1984, defendant paid, under the continuous loss provision of the policy, approximately $621.80 in accident-related medical expenses; however, it refused to pay the remainder of the accident related medical expenses incurred after January 1, 1984.
On February 6, 1987, plaintiff filed suit alleging defendant was responsible for all medical expenses arising from his accident under the continuous loss coverage provisions of the policy. Defendant filed an answer and a motion for summary judgment, contending there was no material issue of fact regarding its contractual liability for medical expenses arising after January 1, 1984, as the continuous loss provision of the policy was only effective during the policy benefit period, which was from 12:01 A.M. January 1, 1983 to 12:01 A.M. January 1, 1984.
A hearing was held on defendant's Motion for Summary Judgment on January 7, 1988, and the trial court rendered judgment in favor of plaintiff and against defendant denying defendant's Motion for Summary Judgment. A written judgment was signed on January 13, 1988.
In his reasons for judgment, the trial judge ruled that all of plaintiff's claims for medical expenses arising from the automobile accident were covered by defendant's policy, notwithstanding the fact that they were incurred after the lapse of the policy. In arriving at his decision, the trial judge relied on the cancellation provisions of LSA-R.S. 22:213(B)(7), as written at the time of the issuance of the policy and in effect when the medical expenses were incurred,[1] and the cases of Cataldie v. La. *395 Health Service & Indem. Co., 433 So.2d 367 (La.App. 3 Cir.1983), affirmed, 456 So. 2d 1373 (La.1984), and Cabibi v. Louisiana Health Service & Indemnity Company, 465 So.2d 56 (La.App. 4 Cir.1985) interpreting this statute.
Since defendant could not appeal from the court's refusal to render summary judgment, its only available remedy was to apply for a writ of certiorari. LSA-C.C. P. art. 968; Kiefer v. Whittaker, 468 So.2d 587 (La.App. 4 Cir.1985), writ den., 469 So.2d 979 (La.1985); Batson v. Time, Inc., 298 So.2d 100 (La.App. 1 Cir.1974), writ den., 299 So.2d 803 (La.1974). The exercise of supervisory jurisdiction by appellate courts is within their plenary power. La. Const. 1974 Art. 5, Sec. 10. Appellate courts generally will not exercise such jurisdiction unless an error in the trial court's ruling will cause the relator irreparable injury or an ordinary appeal does not afford an adequate remedy. Stevens v. Patterson Menhaden Corporation, 191 So.2d 692 (La.App. 1 Cir.1966), writ den., 250 La. 5, 193 So.2d 524 (1967). When the overruling of an exception or motion is arguably incorrect, when a reversal will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictates that the merits of an application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possibly useless future trial on the merits. Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).

LAW
The pertinent provision of the insurance policy with reference to termination of coverage is as follows:
"TERMINATION OF COVERAGE.
* * * * * *
15. Termination of Your Policy will be without prejudice to any Continuous Loss which began while it was in force. We will pay benefits for such loss only until the end of the Benefit Period during which your Policy terminates."
The terms "Benefit Period" and "Continuous Loss" are defined in the policy as follows:
"DEFINITIONS
* * * * * *
8. `BENEFITS PERIOD' means the Calendar Year starting 12:01 A.M. and ending at 12:01 A.M. the next following January 1.
* * * * * *
24. `CONTINUOUS LOSS' means Covered Charges incurred during that part of a Benefit Period following the termination of your Policy, provided:
a. Covered Charges are incurred for the same or related causes during that part of the Benefit Period prior to termination; and
b. In an amount to satisfy the Deductible."
In the portion of the policy entitled "Benefit Provisions," the last sentence of that section provides that "A charge is incurred on the date of treatment, service rendered or a supply is furnished."
In its application for supervisory writs defendant contends the trial court erred in relying on LSA-R.S. 22:213(B)(7) and Cataldie, supra, and that it is entitled to judgment as a matter of law as there is no issue of material fact regarding its obligation under the policy. LSA-C.C.P. Art. 966. Defendant argues that the lapse of the policy due to non-payment of the premiums is not a cancellation of the policy, which would clearly be subject to the rules *396 of the Louisiana Insurance Code. Additionally, defendant argues that, in the instant case, Cataldie, supra, is not controlling because we are not dealing with unconscionable changes in the terms of the policy by the insurer or in the premium charged by the insurer, resulting in the insured having to cancel his policy.
Although the terms "cancellation" and "termination" are frequently used synonymously, they are two separate and distinct acts, each carrying significantly different legal requirements and consequences. Soniat v. Travelers Ins. Co., 517 So.2d 325 (La.App. 1 Cir.1987), writ granted, 518 So.2d 511 (La.1988);[2] McKenzie and Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice, § 226 § 286 (1986).
In Mezzacappo v. Travelers Ins. Co., 523 So.2d 291, at page 294 (La.App. 3 Cir. 1988),[3] this court distinguished the two terms in the following manner:
"`Cancellation' connotes the termination of coverage under an insurance contract, before the contractual termination date of coverage, with or without cause, by unilateral action of the insurer. La.R.S. 22:636. On the other hand, `termination' of coverage connotes cessation of coverage under an insurance contract by reason of passage of the policy period or the occurrence of some event anticipated by the terms of the contract. Thus, although insurance coverage terminates upon cancellation, termination of insurance coverage does not necessarily arise as a result of cancellation."
In Mezzacappo, supra, the plaintiff filed suit seeking payment of past and future medical expenses incurred in connection with an automobile accident which occurred on April 16, 1983, while she was covered by a group hospitalization policy whose premiums were paid by her employer. Approximately six months after the accident, she was fired and, under the terms of the policy, her insurance coverage terminated. The policy provided for conversion to an individual policy, but she chose not to avail herself of this provision. The last premium payment to Travelers on behalf of plaintiff was made in October, 1983. Under an extended benefits provision of the policy, Travelers covered plaintiff's accident related medical expenses incurred during the remainder of 1983 and through December 31, 1984, but denied any responsibility for medical expenses incurred after the latter date. Travelers filed an appeal with this court after the trial court rendered judgment in favor of plaintiff for unpaid expenses incurred subsequent to the termination of plaintiff's coverage. We concluded, inter alia, that LSA-R.S. 22:213(B)(7) was not applicable because the plaintiff's coverage ceased according to the terms of the policy and that the policy was not cancelled. We further held that the insurer was not liable for medical expenses which were incurred beyond the contractually agreed upon date of coverage.
In this case, as in Mezzacappo, coverage ceased according to the terms of the policy and the policy was not cancelled. Therefore, the trial judge erred in finding the cancellation provisions of LSA-R.S. 22:312(B)(7) applicable.
We are also of the opinion that the trial court's reliance on Cataldie was in error. In Cataldie, 433 So.2d at page 371, this court emphasized the limited nature of our holding as follows:
"However, this holding is necessarily limited only to those situations in which an insurer arbitrarily and without just cause terminates a hospitalization policy, provided that the policy allows the insurer to cancel the contract. The holding is further limited to those situations in which benefits were being paid immediately prior to cancellation. In no way do we hold herein that an insurer may never cancel a hospitalization policy once liability to pay medical expenses attaches, since an insurer may so cancel the policy for just cause (e.g., nonpayment of premiums by the insured, termination of employment of a person covered by a *397 group policy during such employment, termination of the policy by the insured or by his employer, etc.) so long as the policy contains provisions allowing for its cancellation.
Furthermore, we do not hold that an insurer may never unilaterally amend the provisions of a policy of insurance without providing a justifiable reason for so acting. Reasonable adjustments in premiums or benefits by the insurer due to ordinary and expected factors and influences are perfectly proper provided that such adjustments are made in accordance with express policy provisions. Rather, we intend for this holding to apply only to those situations in which the insurer either terminates the policy of hospitalization insurance or makes alterations to the policy which are so drastic that it would be unreasonable for the insured to keep the policy in force. In such circumstances (as in the case at hand), we feel that the actions of the insurer constitute an effective termination of the policy by the insurer and require it to provide the insured with reasons which demonstrate that it has just cause for cancellation, rather than mere notice of cancellation. (Emphasis added.)"
See also Trevino v. Prudential Ins. Co., 504 So.2d 1179 (La.App. 3 Cir.1987), writ den., 506 So.2d 1230 (La.1987).
We are also of the opinion that the trial court's reliance on Cabibi was in error for the reasons set forth by the Court of Appeal in Viada v. Blue Cross of Louisiana, 524 So.2d 101 (La.App. 4 Cir.1988), where the Court stated at page 103 that:
"In the instant case, however, unlike the Cataldie and Cabibi decisions, Blue Cross has not cancelled the policy at its whim. Rather, the Viadas lost coverage under the 1975 policy because they failed to pay the premiums timely. LSA-R.S. 22:213(B)(7) and the cited decisions cannot be read so broadly as to compel an insurer to provide continuing coverage for preexisting medical conditions under a lapsed policy. As noted by the Supreme Court in the Cataldie opinion, the legislative purpose of LSA-R.S. 22:213(B)(7) is to prevent the unconscionable cancellation of health insurance policies by an insurer after an illness occurs but before the loss has fully accrued. The statute does not relieve the insured of his obligation to pay his policy premiums timely in order to maintain coverage."
In the case at hand, defendant had just cause in not paying benefits to plaintiff under the policy in light of plaintiff's failure to pay the premium owed to continue coverage under the policy. Furthermore, even if we were to find there was in fact a cancellation, none of the public policy considerations present in Cataldie have been asserted by plaintiff to warrant an extension of coverage under this set of circumstances. Nor do we find the facts of this case warrant a consideration of the abuse of rights doctrine discussed at length in Breland v. Louisiana Hospital Services, Inc., 468 So.2d 1215 (La.App. 1 Cir.1984).
On December 24, 1983, when plaintiff failed to pay the premium due, the insurance contract entered into between plaintiff and defendant lapsed under its own clear terms. Nevertheless, under the terms of the policy, the continuous loss provisions of the policy extended coverage from December 24, 1983 to January 1, 1984, the remaining term of the benefit period following the lapse of the policy. Defendant's contractual obligation extended no further.
An insurance policy is a contract between the insured and the insurer and as such has the effect of law between the parties. LSA-C.C. Art. 1983 (formerly Art. 1901); Freyoux v. Estate of Bousegard, 484 So.2d 761 (La.App. 1 Cir.1986), writ den., 486 So.2d 753 (La.1986). Where the language of an insurance policy is free and clear of ambiguity, it constitutes the contract between the parties and must be enforced as written. Cataldie, supra. Additionally, it is well settled that insurers may limit their contractual liability and impose conditions upon their obligations under the policy, provided that the terms are not in conflict with laws or public policy. Freyoux, supra; Cataldie, supra; Trevino v. Prudential Ins. Co., supra.
*398 We find that the provisions in the policy at issue are free of ambiguity and are not in contravention of any statutory provision or public policy. Therefore, the policy must be enforced as written.
We find the trial judge erred in denying defendant's Motion for Summary Judgment and in holding that, under R.S. 22:213(B)(7), all of plaintiff's medical expenses arising from an automobile accident occurring during the policy period and incurred after the lapse of the policy for non-payment of premium are covered under defendant's policy. Under the clear terms of the policy defendant's obligation to provide continuous loss coverage for said expenses did not extend past January 1, 1984, the remaining term of the benefit period following lapse of the policy.
For the foregoing reasons, the writ is made peremptory and the judgment of the trial court is reversed and defendant's Motion for Summary Judgment is granted.
All costs of the trial court and of the appellate court are taxed to plaintiff-respondent.
WRIT MADE PEREMPTORY.
NOTES
[1] On the effective date of issuance of the policy, LSA-R.S. 22:213(B)(7) provided in pertinent part as follows:

"B. Other provisions (optional)No such policy shall be delivered or issued for delivery containing provisions respecting the matters set forth below unless such provisions are, in substance, in the following forms, or, at the option of the insurer, in forms which in the written opinion of the commissioner of insurance are not less favorable to the policyholder:
* * * * * *
(7) Cancellation: The insurer may cancel this policy at any time by written notice, delivered to the insured, or mailed to his last address as shown by the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim originating prior thereto. The insured may likewise cancel this policy on the above terms."
As amended by Acts 1985, No. 249, § 1 and Acts 1987, No. 510, § 1, LSA-R.S. 22:213(B)(7) now reads as follows:
"(7) Cancellation: The insurer may cancel this policy at any time by written notice, delivered to the insured, or mailed to his last address as shown by the records of the insurer, and shall refund the pro rata unearned portion of any premium paid. Such cancellation shall be without prejudice to any claim for benefits accrued or expenses incurred for services rendered prior to cancellation. Benefits and expenses incurred shall be as defined and limited by the terms of the policy. The insured may likewise cancel this policy on the above terms. Upon such cancellation, however, the insurer shall not be liable for any claim for benefits accrued, or for expenses incurred for services rendered, subsequent to the cancellation date unless otherwise provided in the policy. Upon the written request of the named insured, the insurer shall provide to the insured in writing the reasons for cancellation of the policy. There shall be no liability on the part of and no cause of action of any nature shall arise against any insurer or its agents, employees, or representatives for any action taken by them to provide the reasons for cancellation as required by this Paragraph."
[2] Disposition is unknown at this time.
[3] Writ of certiorari was applied for on June 6, 1988. Disposition is unknown at this time.