Dear Representative Sittig:
You have asked for an opinion for the Board of the Louisiana Health Insurance Association (LHIA) on the following issues:
Issue No. 1:
Since the Board has only provided coverage to persons without major medical insurance coverage of any type, may the Board take persons with "exclusions" or "riders" on their policies, should the actuarial consultants authorize same?
Issue No. 2:
Should the Board additionally offer open enrollment to persons who are paying "excessive premiums" under the statute, may the Board consider these persons who are paying excessive premiums or policies which currently have "riders" as having been "involuntarily terminated" for purposes of waiver of the six month, pre-existing condition clause, since there is no specific definition of "involuntarily terminated" under the statute?
With regard to the first issue, LSA-R.S. 22:237(E)(4) states:
 The Board shall establish policies and procedures to effectuate the provisions of this subsection, which policies and procedures shall give preference to the applications for membership of persons who, at the time of application, are uninsured and uninsurable, and satisfy the eligibility requirements of subsection A of this section.
Therefore, the Board has been granted the discretion to implement the provisions of LSA-R.S. 22:231 et seq. and to fulfill the purpose of the law, which is clearly stated in LSA-R.S.22:231(D).
 It is the purpose and intent of the legislature to establish a mechanism to insure the availability of health and accident insurance coverage to those citizens of this state who, because of health conditions, cannot secure such coverage.
The intent of the Legislature in creating the LHIA is clear. LHIA is to meet the health care needs of the uninsured and the uninsurable and enact policies and procedures to meet that need.
You have therefore, asked whether the Board may extend coverage to those persons who have "exclusions" or "riders" on their policies. For the purpose of this opinion, it is necessary to limit the definition of "exclusions" or "riders" as they are to be used by LHIA. "Exclusions" or "riders", as used herein, refer only to those limitations found in a policy of health insurance which so limit the coverage provided that there is little or no coverage extended. These limitations are so drastic that it would be unreasonable for the insured to keep the policy in force. For example, a person with AIDS whose policy excludes coverage for all AIDS related illnesses has little or no actual coverage extended to him. Exclusions which are not covered in this opinion are those which are not so limiting, such as those which limit coverage as to time, such as six months or one year, or to a term of employment.
LSA-R.S. 22:237(E) provides the grounds for opening enrollment to individuals.[1] In that subsection, the Legislature provided a means for LHIA to open enrollment to individuals ordinarily not covered, with a preference going to those who are uninsured and uninsurable, and satisfy the eligibility requirements of the statute, specified as those listed in LSA-R.S. 22:237(A).
When these exclusions exist or a rider is placed upon the policy, the issue then becomes whether the policyholder is eligible for coverage by the LHIA, since he is "covered" at least nominally by an insurance policy. LSA-R.S. 22:237(A)(1), exempts anyone from coverage when:
 On the effective date of coverage by the association or at any time thereafter, [the individual] is eligible for coverage under health and accident insurance offered by an insurer, reinsurer, or insurance arrangement. A person shall be considered eligible for coverage by an insurer or insurance arrangement as described herein if he meets the criteria for eligibility under any group health benefits plan provided by his employee, union, or other organization of which he is a member, whether or not the person actually is covered under such plan.
This exclusion from eligibility does not include those persons whose coverage is so severely limited as to be nonexistent, as described above. It has been held by our courts that when an insurer makes alterations to a health or medical policy which are so drastic that it would be unreasonable for the insured to keep the policy in force, the actions of that insurer in doing so constitute an effective termination of the policy by the insurer.Cataldie v. Louisiana Health Service and Indemnity Co.,433 So.2d 367,371 (La.App. 3rd Cir. 1983), aff'd 456 So.2d 1373
(La. 1984). As such, the insured is not "eligible" in that he does not meet the criteria for eligibility by the party offering the coverage. If he did, the coverage would not have been effectively terminated.
LSA-R.S. 237(E)(2) also does not prohibit coverage of these persons by LHIA. That subsection specifically states that "a person whose employer, union or other organization provides a group health benefits plan through an insurer or insurance arrangement to its employees or members, or their dependents,and such person is eligible for coverage under such plan." The same standard applies to this definition as to that in subsection (A)(1). If the policy is so limited in coverage as to be nonexistent, then there is no "eligibility" for that insurer's plan, as defined in subsection E(2). Coverage as limited as that referred to herein does not in reality exist.
It is difficult to define the person who is able to obtain a hospitalization policy but whose policy is so limited that the individual is in effect, uninsurable, and uninsured. It is recommended that LHIA limit its enrollment of these individuals[2]
to only those with severe curtailment of coverage, and handle such on a case-by-case basis. It is further recommended that these individuals be identified and included by legislative act to end all discussion concerning their right to participate in this plan.
The second issue is one that is far easier to answer. You have asked that if the Board offers open enrollment to those persons who are paying "excessive premiums" under the statute, may the Board waive the six-month pre-existing condition clause, since there is no definition of "involuntarily terminated" under the statute.
The statute provides the basis for opening enrollment to those with excessive premiums. LSA-R.S. 22:237(E)(1).
 Notwithstanding the provisions of Subsection A(1) of this Section, beginning six months following the date on which the association may issue policies as provided in this Section or on January 1, 1992, whichever is later, and on certification by an independent actuarial firm that funds of the association are sufficient to support the enrollment of additional persons, the board may authorize the enrollment of additional persons as provided for in this Subsection. Any person whose individual insurance premium rate for comparable coverage exceeds by more than two hundred percent the maximum rate which the association may be authorized to charge under R.S. 22:240(F)(3), for persons of comparable age, sex, and geographical location, shall be eligible for coverage as provided in this Part.
The statute, therefore, allows LHIA to open enrollment to those who are paying more than 200 percent of the maximum rate allowed to be charged by LIGA. The issue then is whether those persons asked to pay that amount by their private or group insurer may avoid the six-month pre-existing clause.
LSA-R.S. 22:240(G) provides that:
 . . . Association coverage shall exclude charges on expenses incurred for or caused by pre-existing conditions if incurred within six months following the effective date of association coverage. Such pre-existing condition exclusions shall be waived to the extent to which similar exclusions, if any, have been satisfied under any prior health and accident insurance coverage which was involuntarily terminated by any insurer or insurance arrangement only if application for association coverage is made not later than sixty days following such involuntary termination and in such case, coverage in the association shall be effective from the date on which such prior coverage was terminated.
This exclusion is also adopted in LSA-R.S. 22:237(E)(3) which provides that the exclusion for pre-existing conditions, with the same limitations, applies to the enrollment of additional persons as provided for in subsection "E". The waiver of the six-month period and the conditions necessary for the waiver are the same for those covered by Section 240. The six-month period is waived if the individual was "involuntarily terminated" and he makes application within 60 days of the involuntary termination. LSA-R.S. 22:240(G). He must also have been covered for those conditions by the terminated insurance policy.
The Cataldie appellate court determined that an action by the insurer which altered the policy in such a way as to make continuing coverage by the insured so unreasonable constituted an "effective termination".
 . . . Reasonable adjustments in premiums or benefits by the insurer due to ordinary and expected factors and influences are perfectly proper provided that such adjustments are made in accordance with express policy provisions. Rather, we intend for this holding to apply only to those situations in which the insurer either terminates the policy of hospitalization insurance or makes alterations to the policy which are so drastic that it would be unreasonable for the insured to keep the policy in force. In such circumstances . .. , we feel that the actions of the insurer constitute an effective termination of the policy by the insurer and require it to provide the insured with reasons which demonstrate that it has just cause for cancellation, rather than mere notice of cancellation.
433 So.2d at 367. (Emphasis added.)
The Louisiana Supreme Court agreed with this finding.
 Blue Cross' action in drastically increasing premiums while decreasing and altering coverage obviously caused the cancellation of the policy. Under these circumstances, the insurer must bear legal responsibility for the cancellation.
Cataldie v. Louisiana Health Service and Indemnity Co.,456 So.2d at 1374. Eligibility and coverage therefore can be terminated by the insurer's actions, such as the actions taken by Blue Cross in Cataldie.[3]
The Louisiana Supreme Court is not the only Court which has made this determination. Tusa v. Prudential Insurance Company ofAmerica, 825 F.2d 69 (5th Cir. 1987) (exorbitant premium increases are "constructive" termination of policy).
LSA-R.S. 22:237(C), states that any person whose health and accident insurance coverage has been involuntarily terminated may apply for coverage under the plan. The circumstances referred to by the Supreme Court in Cataldie are clearly the same as that mentioned in the statute. If a person has lost his insurance, whether it be by direct cancellation by the insurer or by indirect but effective termination of the policy, he has been involuntarily terminated and should therefore by allowed the six-month waiver.
As noted in the request, the term "involuntarily terminated" is not defined in the statute. However, the Louisiana Civil Code instructs us that when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that the best conforms to the purpose of the law. LSA-C.C. art. 10. The purpose for this law is clearly expressed in the statute, which is to open enrollment to the uninsured and uninsurable. LHIA has the right to interpret it law in the manner most likely to effectuate its purpose. Based upon the decision of the courts in Cataldie and similar cases, the interpretation of the term is well within the LHIA's abilities.
The term "involuntary" may be defined as discussed above. "Effective" or "constructive" termination refers to an apparent voluntary act which is compelled by the person or entity with such control that the voluntary act is not voluntary at all, but involuntary. For example, resignations which are actually compelled by the employer are not voluntary at all. Such a quit is viewed as a "constructive discharge". Woods v. LouisianaDepartment of Employer Security, 632 So.2d 1989, 901 (La.App. 2d Cir. 1994). The same is true of a "constructive termination" of a policy. If the insurer amends the policy in such a fashion as to make continuing the policy unreasonable, the termination is involuntary.
In conclusion, LHIA may provide coverage to persons with "exclusions" or "riders" on their policies if:
 1. The limitations placed on their policies are so drastic that it would be unreasonable for the insured to keep the policy in force; and
2. The actuarial consultants allow the enrollment.
Further, LHIA may waive the six-month pre-existing condition clause to those persons who are paying "excessive premiums" under the statute and who have policies which currently have riders such as those defined in the previous paragraph. These individuals can be considered to have been "involuntarily terminated" under the statute.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________ Anna E. Dow Assistant Attorney General
[1] All of these requests and responses are limited by the need of LHIA to obtain consent from its actuaries.
[2] Most of these individuals will also have extraordinary high premiums and thus fall under this subsection in any event. LSA-R.S. 22:237(E)(1).
[3] The Supreme Court in the Cataldie opinions were faced with the issue of whether coverage for a defined illness continued after termination of the policy. Both courts found, as a basis for their opinion, that the action of Blue Cross had effectively terminated coverage, even though the insured apparently cancelled a policy he could not longer afford and which did not provide coverage for major problems.