STOKER, Judge.
Plaintiff, Calvin Washington, appeals the dismissal of his suit for worker’s compensation benefits allegedly due him as a result of injuries he suffered on October 1, 1977, while employed as an auto mechanic by defendant, Ameron Automotive Centers (Ameron). For reasons set out below, we affirm.
The parties stipulated that Washington suffered an injury to his back on October 1, 1977, while lying on a front-end rack under an automobile and using a wrench. They stipulated further that Washington’s medical expenses in the amount of $4,452.89 were paid by Ameron and compensation benefits were paid to Washington from October 1,1977 to June 26,1978. The benefits were terminated as a result of a report from Dr. Earl Rozas which indicated that Washington could return to his former employment.
Also the parties stipulated that each time Ameron was presented with a demand for reinstatement of benefits, it had Washington re-examined by Dr. Richard Levy. Ameron refused to reinstate benefits based on Dr. Levy’s reports.
Washington filed this suit on June 5, 1979, seeking reinstatement of benefits, past and future medical expenses, and penalties and attorney’s fees based on Amer-on’s alleged arbitrary refusal to pay. The trial court dismissed the suit and this appeal followed.
Essentially, the issue before us is whether Washington remains disabled by the October 1, 1977 accident. It is apparent from the trial court’s reasons for judgment that Washington was found not to have been disabled beyond June 26, 1978. As stated before, the parties stipulated that Washington suffered a work-related injury. The medical evidence presented in the form of reports and depositions fully supports the judgment and is more fully discussed below.
FACTS
Washington was seen and treated on November 14, 1977 by Dr. Earl Rozas, an orthopedic surgeon, whose reports were admitted into evidence at trial. Dr. Rozas diagnosed Washington’s condition as acute lumbosacral strain and recommended conservative treatment consisting of a lumbo-sacral corset, physical therapy, and muscle relaxants. He continued to treat Washington and placed him in the hospital from *1195 February 19, 1978 to March 7, 1978, for intensive physiotherapy and traction. After the hospital stay, Dr. Rozas reported Washington had improved ninety per cent.
After several more visits, the last of which was on June 5, 1978, Dr. Rozas reported that Washington could return to work, stating in a report dated June 18, 1978, that he could “... find no objective evidence to support the subjective complaints he has had over the last two or three weeks.” Dr. Rozas stated further that “It is also my opinion that there is no permanent physical impairment as a result of this injury.” In reliance on this report, worker’s compensation benefits were terminated on June 26, 1978.
Washington was seen and evaluated by Dr. Dorsey Dysart, a neurologist, on August 8,1978, September 21,1978, and October 27, 1978. An electromyogram was performed along with nerve conduction studies. Dr. Dysart noted that “The patient was quite hysterical during the electromyographic testing.” Some minor objective findings were noted but the doctor reported, “The patient should be treated at this point conservatively in view of the possible secondary psychological response to the injury as demonstrated by his terrible behavior during the process of testing.” Dr. Dysart also reported that Washington was able to return to work when he made his examination.
Reports of at least six other doctors appear in the record, most of which show no objective findings to support Washington’s complaints. Two of these doctors were deposed and their findings are discussed below.
Washington was examined on two occasions by Dr. Richard Levy, a neurosurgeon. Ameron had the examinations made as a result of Washington’s demand for reinstatement of benefits. On each occasion, September 22, 1978 and December 3, 1980, Dr. Levy reported that he could find no objective neurological problems and there appeared to be no reason Washington could not return to work. In reliance on these reports, Ameron refused to reinstate benefits.
Washington relies primarily on the reports and deposition of Dr. Raoul Rodriguez, an orthopedic surgeon. Dr. Rodriguez first saw Washington on July 16, 1981, almost four years after the accident. Other visits were on November 24,1981, February 18, 1982, and February 25, 1982. The only objective findings reported by Dr. Rodriguez were slight atrophy in the left leg and abnormal reflexes. These symptoms were present only in the first two visits, not in the two February visits. Dr. Rodriguez could not directly relate Washington’s complaints at the time of these visits to the accident in 1977 nor could he comment as to Washington’s present condition since February 25, 1982, was his last visit. Trial of the matter was held on April 15, 1982.
In his brief on appeal, plaintiff makes the following assignment of errors:
1. “The trial court applied too strict a test in denying plaintiff’s claim considering it being in the nature of a workmen’s compensation claim.
2. “The trial court abused is discretion in completely disregarding the testimony of Dr. Raoul Rodriguez, plaintiff’s physician, who was the only physician who had seen plaintiff for quite some time prior to trial.
3. “The trial court erred in its reasons for judgment, by considering the report of Dr. Dysart and interpreting Dr. Dysart’s report to mean that plaintiff’s injury may be aggravated by posturing or malingering when in fact the report merely referred to ‘plaintiff’s terrible behavior’, during the process of testing.
4. “The court failed to provide plaintiff with proper medical treatment for further diagnosis as per the recommendation of Dr. Rodriguez.
5. “The court failed to apply the odd lot doctrine and correct burden of proof once plaintiff had clearly shown by a preponderance of the evidence and through unimpeached testimony as to his present disability that he fell into *1196 the odd lot doctrine and the court thereafter failed to apply the proper presumption to the defendant to show that plaintiff was not so disabled or placed in an odd lot.”
Although the basic issue in this case is whether plaintiff continues to be disabled, we will address the specific allegations of error set forth above in the order presented.
I.
As this court stated in Ellis v. Rapides Parish School Board, 419 So.2d 990 (La.App. 3rd Cir.1982):
“While we recognize that in compensation cases the law is to be liberally construed in favor of the employee, the plaintiff in a compensation suit is required to prove the facts by a preponderance of the evidence and with the same legal certainty as required in any other civil case. Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963).”
With this in mind, we cannot say that the burden of proof applied by the trial judge to plaintiff in this case was “too strict.” The determination of disability is a question of fact which will not be disturbed on appeal unless it is shown to be clearly wrong.
Washington’s evidence consists of the testimony of himself and his wife that he has been in constant pain and unable to work since the accident on October 1, 1977. His complaints to all the doctors whose reports appear in the record have been consistent throughout. He also places strong emphasis on the findings of Dr. Rodriguez previously discussed.
The trial court considered the lay testimony along with all the medical evidence and determined that compensation benefits were properly terminated as of June 26, 1978. After carefully considering all evidence in the record before us, we conclude that the trial court did not err in its finding of no disability.
II.
Plaintiff complains that proper consideration was not given to the findings of Dr. Rodriguez, the only doctor who had seen him at any time near the time of trial.
As a general rule, the treating physician’s testimony should be given more weight than that of a doctor who examines a plaintiff for diagnosis only. Ellis v. Rapides Parish School Board, supra. Although Dr. Rozas did not testify at trial or through deposition, his reports are entitled to the consideration given testimony. Dr. Rozas was the treating physician in this case, seeing Washington for the first time approximately six weeks after the accident and seeing him on a regular basis thereafter until June 5, 1978, a period of about seven months. Dr. Rozas, along with other doctors who saw Washington for diagnosis only, felt that he was able to return to work.
We note that Dr. Rodriguez may have seen Washington for more than diagnostic purposes, but just as the trial judge did, we find it significant that Dr. Rodriguez saw him for the first time almost four years after the accident. The trial judge erroneously stated that Washington was first seen by Dr. Rodriguez on October 20, 1981, more than four years after the accident. That date was the date of Dr. Rodriguez’s first report. The first visit was on July 16,1981. Even giving the minor objective findings of Dr. Rodriguez the greatest possible weight, we still cannot say the trial judge was clearly wrong in accepting the great abundance of medical evidence contrary to the views of Dr. Rodriguez, particularly in view of the fact that Dr. Rodriguez could not relate his findings back to the 1977 accident.
III.
In considering Dr. Dysart’s comments as to plaintiff’s “terrible behavior” during testing, the trial judge stated, “This statement indicates to the Court that the plaintiff’s injury may be aggravated by posturing or malingering.” Assuming that *1197 this assessment by the trial judge was erroneous, as plaintiff contends, we do not believe it constitutes reversible error.
In considering Dr. Dysart’s reports, along with others in the record, we believe the judgment of the trial court is fully supported by the evidence.
IV.
Dr. Rodriguez’s recommendations for further testing of plaintiff were based on a hypothetical assumption that plaintiff had continued to suffer from the same complaints since his last examination on February 25, 1982. While plaintiff testified at trial that he still suffered the same symptoms, the trial judge did not err in failing to order further testing and treatment.
Plaintiff had been fully tested by numerous other doctors before Dr. Rodriguez, all of whom failed to find any but the most minor of objective symptoms and all of whom felt he could go back to work. Further testing and treatment was not justified and was properly denied by the trial court.
V.
Plaintiff’s last argument is that, because of his substantial pain and limited ability, the odd-lot doctrine should be applied and as a result he should be awarded benefits. The only cases cited by plaintiff in his brief regarding the odd-lot doctrine are those which applied the doctrine in cases of suba-stan tial pain. We do not agree.
In order to be classified under the odd-lot doctrine with respect to pain, plaintiff must show that he can function only with substantial pain which appreciably limits the type of work available to him and diminishes his ability to compete in the labor market. Lattin v. Hica Corporation, 395 So.2d 690 (La.1981). Washington’s sole support of his claim of substantial pain comes from the testimony of himself and his wife and the minor findings of a doctor who examined him almost four years after the accident. There is an abundance of medical evidence to the contrary.
The trial court’s findings of fact as to disability are entitled to great weight and will not be disturbed unless clearly wrong. Lattin v. Hica Corporation, supra. No clear error exists in this case.
CONCLUSION
For the above stated reasons, the judgment of the trial court dismissing plaintiff’s suit is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.