449 So.2d 584 (1984)
Richard LANDRY
v.
LOUISIANA HOSPITAL SERVICE, INC.
No. 83 CA 0557.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
*585 Daniel J. Nail, Napoleonville, for plaintiff second appellantdevolutive.
John M. Parker, Baton Rouge, for defendant first appellantsuspensive.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit in contract seeking to recover $9,431.91 for surgical and medical expenses for which coverage is claimed under a policy of insurance. The insured also sought statutory penalties for failure to pay the claim. The insurer answered the suit and asserted a coverage defense. The case was submitted to the district court on a joint stipulation of facts and evidence. The district court rendered judgment in favor of the insured for the amount of the claim with legal interest thereon from date of judicial demand but refused to award statutory penalties. The insurer took a suspensive appeal from the judgment against it, and the insured took a devolutive appeal from the judgment rejecting statutory penalties.

FACTS
Louisiana Hospital Service, Inc. (Blue Cross) issued a contract of hospital and surgical insurance to Richard J. Landry effective May 1, 1974. This policy was in full force and effect at all times pertinent to this suit. Because Landry had preexisting high blood pressure, the following rider was made a part of the policy:
IT IS AGREED that the above Contract, including all riders and endorsements, if any, to which this Rider is attached, shall provide no benefits from the above Effective Date for care or treatment rendered to:
Landry, Richard J. for the following illness(s) and/or condition(s), including conditions resulting therefrom:
Abnormal blood pressure; treatment for and complications therefrom.
On May 13, 1980, Landry was admitted to the Touro Infirmary in New Orleans, Louisiana, for diagnostic testing and treatment. His problems were subsequently diagnosed as (1) benign actively secreting adenoma [tumor] of the left adrenal gland, (2) hyperplasia [enlargement] of the adrenal glands, (3) left side renal artery stenosis [blockage], (4) hypertension [high blood pressure] secondary to the first three conditions, and (5) diabetes mellitus secondary to hypokalemia [low potassium]. On June 30, 1980, Dr. William Leon performed surgery on Landry and removed his left adrenal gland. Landry was discharged from Touro on July 11, 1980.
Landry was readmitted to Touro on August 11, 1980, for four days to be checked for any residual causes of his hypertension *586 and to evaluate the surgery. He was again hospitalized on April 25, 1981, and remained until May 1, 1981, for these same purposes.
Medical and surgical expenses for treatment of Landry's illness were stipulated as $9,431.91. Landry submitted a claim to Blue Cross for these expenses. Blue Cross denied the claim based on the coverage exclusion contained in the above-quoted policy rider.

COVERAGE
Blue Cross contends that the district court committed error by finding that the language of the rider was ambiguous and by determining that Blue Cross had insurance coverage for Landry's medical and surgical expenses. Blue Cross contends that Landry's treatment was for high blood pressure and the complications therefrom and that the rider excludes coverage for such expenses.
Any exclusion from coverage in an insurance policy must be clear and unmistakeable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. Stewart v. Louisiana Farm Bureau Mutual Insurance Company, 420 So.2d 1217 (La.App. 3rd Cir.1982). The burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance. Kling v. Collins, 407 So.2d 478 (La.App. 1st Cir.1981); Barber v. Best, 394 So.2d 779 (La.App. 4th Cir.1981).
Dr. Murrel H. Kaplan, specialist in internal medicine, testified that he first examined Landry on April 14, 1980, on a referral from Dr. Leon Hebert. Landry gave a history of having hypertension for years. Landry's blood pressure at that time was 240 over 120. Attempts were made to control the blood pressure by medication, but they were unsuccessful, and Landry was admitted to the Touro Infirmary on May 13, 1980. Dr. Kaplan testified that the tumor of the left adrenal gland caused Landry's blood pressure problem and that since the removal of the tumor Landry's blood pressure has been controlled satisfactorily by medication. Dr. Kaplan described Landry's final postoperative condition as mild hypertension. Dr. Kaplan indicated that there was no way to know when the tumor first formed.
Dr. Mario R. McNally, a specialist in endocrinology, diabetes and metabolic disorders, first saw Landry on May 29, 1980, in Touro Infirmary on a referral from Dr. Kaplan. His examination of Landry revealed hypertension with an altered mental status, disorientation and weakness. Dr. McNally ran diagnostic tests on Landry and found a high aldosterone production from the left adrenal gland. The adrenal gland normally produces very low levels of aldosterone, but the tumor caused the excess production. Dr. McNally testified that excess aldosterone production causes hypertension (high blood pressure) and hypokalemia (low potassium). Potassium is necessary for muscle function, kidney function and brain function. If a person's potassium level is down, the whole system suffers. The maintenance of a low potassium level for an extended period of time might provoke a cardiac arrest. Dr. McNally indicated that Landry had one of the most severe manifestations of low potassium and hypertension he had ever seen which was caused by a tumor of the adrenal gland. Either condition, hypertension or hypokalemia, could be fatal. Surgery was the only viable alternative for relieving Landry's problems because medication was not successful. The purpose of the surgery was to relieve both conditions.
Dr. Edward O'Brien Comer, a specialist in internal medicine and the Medical Director of Blue Cross, studied Landry's medical and hospital records and the depositions of Drs. Kaplan and McNally. The record does not reflect that Dr. Comer either examined or treated Landry. Dr. Comer testified that Landry was admitted to Touro for high blood pressure and that the treatment he received there was related to this condition. Landry's medical records indicated he suffered from prolonged severe hypertension. This was in part evidenced by the 90% occlusion of the main *587 blood vessel leading to the left kidney, blood vessel disease within the kidney and eye grounds hemorrhages. The tumor was not the sole cause of Landry's hypertension, and his diabetes could also affect this condition. Dr. Comer was of the opinion that there were multiple reasons for the low potassium condition suffered by Landry: (1) taking medication [Hydro Diuril] that would wash the potassium out of the system in the urine; (2) dietary changes; (3) kidney damage; and (4) the adrenal tumor. Landry had a low potassium count prior to his admission to the hospital, and this deficiency was corrected within one week of his admission and was no longer a medical problem. Dr. Comer further testified that the potassium wasting did not affect Landry's system and was a minor problem. He felt the primary effect of the tumor was the hypertension. Dr. Comer conceded that aldosterone producing tumors have two main effects, hypertension and loss of potassium.
The district court reviewed the medical evidence and reached the following factual conclusions:
A review of the medical evidence in this matter has caused the Court to determine that the treatment, which forms the basis of plaintiff's claim, was performed for a tumor of the adrenal gland. The tumor caused overproduction of aldosterone causing plaintiff's hypertension to be uncontrollable and causing hypokalemia or wastage of potassium, either of which conditions could have caused brain damage or cardiac arrest.
The adenoma (tumor) of the adrenal glad [sic] resulted in (a) hypokalemia, treatment for which is covered under the policy and (b) hypertension, treatment for which defendant alleges is excluded under the policy. The Court is of the opinion that the medical evidence shows the excision of the left adrenal gland was as much for the hypokalemia as for the hypertension.
Because the testimony of the medical doctors was presented by deposition, this court is not bound by the manifest error rule in evaluating that evidence. Gould v. State, Louisiana Department of Corrections, 435 So.2d 540 (La.App. 1st Cir.1983), writ denied, 438 So.2d 1107 (La.1983). The district court's factual conclusions are supported by a preponderance of the evidence. Drs. Kaplan and McNally were Landry's treating physicians, and Dr. Comer was not. The observations and opinions of a treating physician should be accorded greater weight than those of a physician who did not serve in that capacity. Dobard v. State Farm Insurance Company, 437 So.2d 366 (La.App. 4th Cir.1983); Washington v. Ameron Automotive Centers, 432 So.2d 1193 (La.App. 3rd Cir.1983). Further, Dr. McNally was a specialist in endocrinology, diabetes and metabolic disorders and had special training in the effects of the excess aldosterone production on Landry's system. Accordingly, we agree with the factual conclusions reached by the district court.
The rider excludes coverage for "care or treatment" for abnormal blood pressure "including conditions resulting therefrom...". The rider does not exclude coverage for care or treatment of hypokalemia. The tumor caused hypertension and hypokalemia. The hypokalemia was not caused by the hypertension. The rider does not exclude coverage for conditions whose origin is the same medical cause as hypertension. Although the excision of the tumor was a treatment for the hypertension, it was also a treatment for the hypokalemia. The rider does not exclude coverage when a covered risk and an uncovered risk are cared for by a common course of treatment. Coverage would only be excluded if the course of treatment was exclusively for hypertension. The judgment of the district court awarding Landry $9,431.91 is affirmed.

INTEREST ON JUDGMENT
Blue Cross contends that the district court committed error by awarding legal interest on the judgment from date of judicial demand and asserts that such interest *588 should only accrue from the date of judgment.
All contractual debts bear interest from the time they become due, unless otherwise stipulated. La.C.C. art. 1938. Where no conventional interest is stipulated, legal (judicial) interest shall be recovered. La.C.C. arts. 1940 and 2924. Article XI(1)(c) of the Blue Cross policy provides that Blue Cross will make payment to its insured "upon receipt of the Subscriber's claim in a form satisfactory to the Company."[1] Although the parties stipulated that Landry submitted his claim to Blue Cross, there is no stipulation as to when this occurred. However, Landry only prayed for legal interest from date of judicial demand until paid. For this type of claim, a court may only award legal interest in the judgment as it is prayed for. La.C.C.P. art. 1921; Hoyt v. Hi-Lo Oil Company, 419 So.2d 994 (La.App. 3rd Cir.1982); James, Robinson, Felts & Starnes v. Powell, 303 So.2d 229 (La.App. 2nd Cir.1974). The judgment awarding legal interest from date of judicial demand is affirmed. Doty v. Central Mutual Insurance Company, 186 So.2d 328 (La.App. 3rd Cir.1966), application denied, 249 La. 486, 187 So.2d 451 (1966); Prilleux v. Metropolitan Life Ins. Co., 4 So.2d 768 (La.App.Orl.1941).
The case of Bink v. Blackwell, 432 So.2d 296 (La.App. 5th Cir.1983), cited by Blue Cross to support its position, is not good authority. On suits in contract, legal interest is recoverable from the time the debt becomes due. La.C.C. art. 1938. In suits that are ex delicto, legal interest runs from the date of judicial demand. La.R.S. 13:4203. In Bink v. Blackwell, a pedestrian sued her uninsured motorist carrier for injuries she sustained when struck by a truck. A suit by an insured against his own uninsured motorist carrier is a suit in contract. Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580 (1968). The decisions of the Courts of Appeal were divided on whether legal interest on claims by an insured against his uninsured motorist carrier ran from date of judgment [Bink v. Blackwell; Ainsworth v. Government Employees Insurance Company, 427 So.2d 1220 (La.App. 3rd Cir. 1983), modified, 433 So.2d 709 (La.1983); Horstmann v. Drake, 420 So.2d 473 (La. App. 4th Cir.1982); Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3rd Cir.1982)], or from date of judicial demand [Samanie v. Bourg, 434 So.2d 149 (La.App. 5th Cir. 1983), writ denied, 435 So.2d 445 (La.1983); Probst v. Wroten, 433 So.2d 734 (La.App. 5th Cir.1982); Stroud v. Liberty Mutual Insurance Company, 429 So.2d 492 (La. App. 3rd Cir.1983), writ denied, 437 So.2d 1147 (La.1983); Chiasson v. Whitney, 427 So.2d 470 (La.App. 5th Cir.1983), writs denied, 433 So.2d 179, 180, 183 (La.1983); Brown v. Southern Farm Bureau Insurance Company, 426 So.2d 684 (La.App. 1st Cir.1982); Hebert v. Ordoyne, 388 So.2d 407 (La.App. 1st Cir.1980) ]. The Louisiana Supreme Court appears to have put this dispute to rest in the per curiam opinion rendered in Ainsworth v. Government Employees Insurance Company, 433 So.2d 709 (La.1983), wherein interest was granted from date of judicial demand. In addition, the language in the policy in the instant case provides for payment upon presentation of a satisfactory proof of loss. This language is considerably different from that used in uninsured motorist coverage.

STATUTORY PENALTIES
Landry contends that the district court committed error by denying his claim for statutory penalties and contends that the denial of his claim by Blue Cross was unreasonable and unjust.
La.R.S. 22:657(A) provides in pertinent part as follows:
All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are *589 furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist.... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.
The policy of insurance issued by Blue Cross to Landry is a health insurance policy in the purview of La.R.S. 22:657. Rudloff v. Louisiana Health Services and Indemnity Co., 385 So.2d 767 (La.1980); Peters v. Life General Security Insurance Company, 400 So.2d 1103 (La.App. 1st Cir. 1981), writ denied, 403 So.2d 70 (La.1981). What are "just and reasonable grounds" is a question of fact, and the district court's findings should not be disturbed unless they are clearly wrong. Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir.1980).
The district court found that Blue Cross refused to pay Landry's claim based on an interpretation of the rider which was not "unreasonable". Where an insurer's interpretation of its policy is reasonable and not contrary to any existing jurisprudence, the denial of a claim is not arbitrary so as to require the imposition of penalties, and the insurer has a right to a judicial determination of the issues. While a court may disagree with the interpretation the insurer places upon its policy, its actions in refusing to pay should not necessarily subject it to the penalty provisions of the statute. Stewart, 420 So.2d at 1220.
Dr. Comer, Blue Cross' Medical Director, testified that shortly after Landry was admitted to the hospital the medication given him for the hypokalemia corrected his potassium deficiency and it was no longer a serious problem throughout the remainder of his hospitalization. Dr. Comer was also of the opinion that there was no evidence that the potassium loss was significantly connected with Landry's problems. Further, we have been unable to find any jurisprudence which precisely deals with the question presented to us, that is, does an exclusionary provision apply when the same treatment affects a covered condition (hypokalemia) and also an excluded condition (hypertension)? Because Blue Cross has reasonable factual and legal defenses to this claim, we cannot say that the district court's ruling is clearly wrong, and it is therefore affirmed.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. Blue Cross is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Compare Trico Services Corporation v. Houston General Insurance Co., 414 So.2d 1313 (La. App. 2nd Cir.1982), writ denied, 420 So.2d 165 (La.1982) and La.R.S. 22:657.