722 So.2d 1022 (1998)
Joseph M. HAAS, et al., PlaintiffsAppellees,
v.
AUDUBON INDEMNITY COMPANY, DefendantAppellant.
No. 98-565.
Court of Appeal of Louisiana, Third Circuit.
October 21, 1998.
*1023 Jimmy Roy Faircloth, Jr., Alexandria, for Joseph M. Haas, et al.
Mark Alan Watson, Alexandria, for Audubon Indemnity Company.
Before THIBODEAUX, COOKS and WOODARD, JJ.
WOODARD, J.
This is an insurance coverage dispute. Joseph M. Haas and his family (Haas) are onehalf owners of a large building in Alexandria, Louisiana. Audubon Indemnity Company (Audubon) insured their interest in the building. Unknown persons broke into the building and caused massive damage to its interior. Haas made demands for coverage under the policy for the losses. Audubon paid $149,101.00 but denied further payment, citing exclusions for theft and other provisions of the policy. Haas filed suit, recovering $174,448.00, less $3,784.00 for the salvage value of the stolen materials, plus penalties of ten percent of the claim and attorney's fees in the amount of $24,850.52. Audubon appeals. We affirm the judgment, increasing the attorney's fees award by $5,000.00 for this appeal and awarding $5,000.00 in penalties.

FACTS
On March 15, 1994, unknown persons broke into the Old Sears Building in Alexandria, Louisiana. It had been vacant since 1990. The intruders removed pipes and wires presumably for their salvage value. The next day, surrounding residents called the City of Alexandria, complaining that they had no water. City workers discovered that the main water valve had been shut-off. The water main was turned on and two days *1024 later, residents reported that water was pouring out of the Old Sears Building. An investigation revealed the theft and massive damage to the interior of the building. The intruders removed the pipes while the water valve was shut-off, and when the water was turned back on, it flooded the building. The intruders did major damage to the walls, flooring, fixtures, and duct system of the building. After the flood, the floor had to be removed and replaced. The flooring contained asbestos which had been contained and was completely safe prior to the flooding. After the tiles were loosened by the water, they had to be treated as asbestos containing materials (ACM). This required techniques to be used which were considerably more expensive than techniques for removal of non-ACM materials.
Haas insured his one-half interest in the building with Audubon under a Building and Personal Property Coverage Form and paid Haas $149,101.00 for water damage but refused to pay other damages amounting to over $340,000.00. Haas demanded that Audubon pay for his one-half of the loss. Audubon refused to pay based on a clause in Haas' insurance policy which covered vandalism, but excluded theft. Audubon claimed that all the damage, except the water damage, was excluded from coverage by this theft exclusion. Further, Audubon refused to pay for the removal of the asbestos containing flooring based on an asbestos exclusion in Haas' Commercial General Liability Coverage Form.
Haas filed suit against Audubon, claiming that the building's damage should be covered as vandalism. Haas was willing to concede that the theft exception was applicable to his claim but only for the salvage value of the raw materials actually removed from the building, not the damage to the building itself. Audubon rejected that view, claiming that the only covered loss, other than water damage, was damage to a door, presumably used by the thieves to enter and exit the building. However, since the damage to the door amounted to less than $400.00, this damage fell under Haas' $1,000.00 deductible and was not covered. The most contested issue of this trial was whether the damage to the building was the result of vandalism or theft.
Audubon was willing to pay for the cost of removing non-ACM flooring but contended that any additional cost was excluded under the asbestos exclusion of Haas' Commercial General Liability policy. Audubon's own witness admitted that, despite his initial decision to deny coverage based on the asbestos exclusion, he had later informed the lawyers that the asbestos exclusion did not apply to this case. Audubon's incorrect interpretation of the policy was part of the reason for the trial court's award of penalties and attorney's fees to Haas.
Audubon argued, in the alternative, that if the asbestos exclusion did not apply to the policy, the cost of the asbestos abatement should be limited to $10,000.00. It based this argument on a Pollutant clean-up and removal clause. At trial, it relied on the pollution exclusion to limit coverage to $10,000.00. Haas claimed that the "pollution exclusion" did not apply to the loss for two reasons. First, the asbestos was completely contained prior to the break-in and flood; therefore, the asbestos was not a pollutant. Second, asbestos abatement was required of the building not of "land or water." If either of these were correct, the "pollution exclusion" would not apply.
Before trial in June of 1997, the parties entered into an extensive stipulation. This agreement resolved all issues except Haas' allegation that Audubon acted in bad faith when it denied coverage for the damages and: (1) Whether or not Audubon could exclude coverage for the asbestos abatement based on either the asbestos exclusion or the pollution exclusion; (2) Whether or not Audubon was responsible for the damage to the building as a result of theft; and (3) Whether or not Audubon was responsible for the architectural engineering design fee.
A bench trial was held on July 15, 1997 in Alexandria, Louisiana. At the trial, both sides made arguments concerning the definitions of theft and vandalism. The trial court considered the stipulation which stated, "While removing the materials the unknown persons caused property damage to the building's walls, systems and fixtures." This *1025 does not mean that all the damage was done for the purpose of removing the materials, only that the removal and the damage happened at the same time. The trial court commented that there was no way to determine what damage had occurred in furtherance of the theft and what damage had been the result of pure vandalism. Based on the extensive destruction of fixtures and the spreading of debris throughout the building, the trial court believed that at least some damage must have been the result of vandalism. Vandalism does not by definition exclude the taking of property, but it does require more than the taking of property. The policy definition of vandalism requires the "willful and malicious destruction of property." The trial court saw this as an ambiguity in the policy which must be construed against the insurer. Accordingly, Audubon was ordered to pay $174,448.00, the cost of one-half the damage to the building less $3,784.00 for the salvage value of the stolen materials.
The trial court refused to apply the asbestos exclusion to the asbestos abatement because the asbestos was not a "pollutant" that must be extracted from the land or water. It was wholly contained in the building. Therefore, Audubon could not claim the limitation of $10,000.00 under the "pollution exclusion." The exclusion also applied to the "enforcement of any ordinance or law: (1) regulating the construction, use or repair of any property; or (2) requiring the tearing down or repair of any property including the cost of removing debris." Audubon was willing to pay for the removal of the debris but not the disposal of it. The disposal costs were considerable because the debris consisted of asbestos containing materials.
Although Haas argued that since he voluntarily complied with asbestos disposal regulations, there was never any "enforcement," the trial court said this was irrelevant. Even assuming that enforcement includes compliance, Audubon must pay for the removal and the disposal of the debris because the debris was a result of vandalism. Since the debris was the result of vandalism, not the result of construction and repair, this exclusion provision was not applicable to this claim.
Also, Haas claimed coverage for an architectural engineering fee in the amount of $74,000.00. This was a detailed set of plans for the repairs to the building. Haas claimed the plans were vital for an accurate bid on the needed repairs. Audubon denied this expense, arguing that all repair bids had been submitted prior to the architectural engineering design. Haas did not introduce any evidence to prove that this fee was part of the loss. The trial court refused to order Audubon to pay for it.
Audubon appealed the trial court's order that it pay Haas the $174,448.00, less $3,784.00 for the salvage value of the stolen materials, for damage to the Old Sears Building, as well as the award of penalties of ten percent of the claim and attorney's fees of $24,850.52. Haas answers the appeal, seeking penalties under La.R.S. 22:1220 and an increase in attorney's fees for the work in this appeal.

ASSIGNMENTS OF ERROR
Audubon alleges that the trial court erred in: 1. Its interpretation of the insurance policy, which resulted in a failure to apply a policy exclusion for damages which were "caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars."
2. Holding that the defendant failed to prove that all of the damages at issue were the result of theft and that some theft-related damages could still be covered under the vandalism provision.
3. Holding that the cost of the removal of asbestos is covered where a coverage exclusion specifically provides that the removal of debris or tearing down of property will not be covered when done pursuant to the enforcement of any ordinance or law.
4. Holding that the plaintiff was entitled to penalties and attorney's fees where Audubon's interpretation of its policy was, if not correct, reasonable.
5. Taxing as costs of court expenses incurred by "numerous architects, engineers, and an asbestos specialist" who *1026 did not testify at trial, either live or by deposition.
Haas answered the appeal. He contends that:
1. The trial court erred in failing to award a $5,000.00 penalty under La. R.S. 22:1220.
2. Appellees are entitled to an increased award of attorney's fees for defending this appeal.

LAW

THE INSURANCE CONTRACT INTERPRETATION QUESTIONS
As the first three assignments of error concern interpretation of the insurance contract, they will be discussed in this portion of the opinion. In Dubois v. Parish Gov't Risk Management Agency-Group Health, 95-546 (La.App. 3 Cir. 1/24/96); 670 So.2d 258, 260, we stated the law to be applied to the issues in this case. We said:
It is well settled that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts as set forth in the Civil Code. Crabtree v. State Farm Insurance Co., 93-0509 (La.2/28/94); 632 So.2d 736. Interpretation of a contract is the determination of the common intent of the parties. La.Civ.Code art. 2045. If the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent and the agreement must be enforced as written. See La.Civ.Code art. 2046. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. See La.Civ.Code art.2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. Civ.Code art.2053.
Regarding the interpretation of an exclusion in an insurance policy, the Louisiana Supreme Court stated in Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991):
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Capital Bank & Trust Co. v. Equitable Life Assurance Society, 542 So.2d 494 (La.1989); Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111 (1953). Equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation. 13 J. Appleman, Insurance Law and Practice § 7427 (rev. ed.1976). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Carney v. American Fire & Indemnity Co., 371 So.2d 815 (La. 1979); W. McKenzie & H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice § 4 (1986). The judicial responsibility in the interpretation of an insurance policy is the determination of the common intent of the parties. W. McKenzie & H. Johnson, supra.

Additionally, the burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1 Cir.1984).
With these principles firmly in mind, we now address the insurance contract interpretation questions in this case.

Vandalism or Theft?
The language of the insurance policy for this issue stated:

A. COVERED CAUSES OF LOSS
....
8. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.
We will not pay for loss or damage:
....
b. Caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.
(Emphasis added.)
Audubon contends that the exclusionary language relating to theft is applicable to all *1027 of the damages claimed by Haas except for damage to the building caused by the burglars when "breaking in" or "exiting;" that all the damages to the building were theft related and, therefore, subject to the theft exclusion, except for the limited coverage specifically provided.
The trial court opined:
Does this mean [with reference to the theft provision of the policy]:
The Insurer will not pay for the value of items removed from the building by theft, although these items may be part of the building? The Insurer reiterates that it will pay for building damage caused by breaking and entering (which may or may not constitute vandalism)?
Does this mean that the Company will not pay for damage other than breaking and entering caused in furtherance of or in the course of the commitment of theft?
What of vandalism and the willful and malicious damaging of property which was unnecessary for the commission of the theft?
....
But another question:
What part of the damage was caused in the course of perpetration of a theft, and what part was pure vandalism?
In view of extensiveness of the utter destruction of fixtures and spreading of debris in the building, there must necessarily have been pure vandalism either by the persons who perpetrated the theft and/or some other persons. There is nothing in the record on which to base a finding that the entire damage inside the building was caused in furtherance of theft. The destruction may well have been caused by the thieves but not all would have been in the furtherance of the theft unless that is specifically proved. Some damages may have been caused prior to the theft.... It is certainly possible that there were entries by the same persons on more than one occasion, although the removal of water pipes was planned because the water main had been cut off and it was only after the water was turned on that the asbestos problem arose.
....
There is no question of coverage should the removed materials have been simply pulled out and left in the building. The basic definition of theft requires asportation, that is the taking of the thing into possession by the thief.
Vandalism coverage in this policy is the rule. The incidence of the theft does not diminish the acts of vandalism in this case. The theft damage is a narrow exception to the vandalism coverage. It is not an independent exclusion. The trial court correctly held that the theft exception does not exclude vandalism damage caused prior to or concurrently with a theft. The trial court correctly found that, in view of the utter destruction done to the building, the acts should be considered vandalism. The record establishes sufficient circumstantial evidence to infer the required degree of malice for the destruction to meet the definition of vandalism in the policy. See Lanza Enters., Inc. v. Continental Ins. Co., 142 So.2d 580 (La.App. 3 Cir.1962). This finding of fact is not manifestly erroneous.
The trial court recognized the patent ambiguity of the theft exclusion. Specifically, did it mean all damages to the building relating to the theft are subject to the exclusion, or did it mean that just the value of the materials carried away from the building shall be excluded? It correctly interpreted the policy in favor of coverage, excluding the replacement costs of the stolen materials from the judgment. The trial court strictly construed the theft exception. See generally, Sterling v. Audubon Ins. Co., 452 So.2d 709 (La.App. 3 Cir.), writ denied, 456 So.2d 169 (La.1984). The burden of proof was on Audubon to prove its entitlement to greater benefit of the theft exclusion than granted by the trial court. Dubois, 670 So.2d 258. This it failed to do.
The trial court did not err on this issue. Audubon's assignment of error is without merit.

WERE All Damages the Result of Theft?
Audubon contends that all the damages were the result of theft, including the stolen piping which was encased in asbestos. It *1028 contends that only because of the theft of the piping was the asbestos rendered a hazard and that there was no vandalism, which was covered by the policy, for vandalism's sake.
As discussed in the above assignment, the trial court found that the degree of destruction to the building was indicative of vandalism. After reviewing the record, this factual finding is not manifestly erroneous, and will not be disturbed on appeal.
This argument of Audubon is without merit.

Removal of Asbestos
The relevant language of the exclusion is as follows:

B. EXCLUSIONS
1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence of loss.
a. Ordinance or law.
The enforcement of any ordinance or law:

(1) Regulating the construction, use or repair of any property; or
(2) Requiring the tearing down of any property, including the cost of removing its debris.
(Emphasis added.)
First, Audubon contends that this element of damage arises solely from theftrelated activities and therefore is subject to that exclusion. For the reasons discussed above, this contention is without merit. Second, it maintains that, pursuant to the "ordinance or law" exclusion, it is not liable for the increased costs of abatement of asbestos in the flooring which was required by the United States Environmental Protection Agency regulations concerning asbestos.
The trial court opined:
The flooding caused extensive damage to the building. Coverage of part of these damages is not contested. A substantial part to the damage, however, is contested. When the flooding occurred, asbestos floor tile and asbestos from the interior of the building walls was soaked. It became necessary to "abate" the asbestos. This required the following regulations of the United State Environmental Protection Agency. There was no move by the EPA to enforce its regulations. The regulations were voluntarily complied with making enforcement proceedings unnecessary.
....

ASBESTOS ABATEMENT.
There is very little jurisprudence in Louisiana which would assist us on this question.
....
B. Enforcement of an Ordinance or Law.
The exclusion in the policy relates "the enforcement of any ordinance or law: (1) regulating the construction, use or repair of any property or (2) requiring the tearing down or repair of any property including the cost of removing debris."
Assuming that "enforcement" includes "compliance," this provision is subject to careful interpretation.
The abatement of asbestos is in no way synonymous with "construction, use or repair." This is removal of debris as a result of pure vandalism.
The phrase "tearing down or repair of any property including the cost of removing debris" is subject to interpretation by the rule of ejusdem generis. The part of that phrase "including cost of removing debris" is limited by and is defined by the terms "construction and repair." It must be read as "the removal of debris in the course of construction and repair."
CFR Sec 61.141 et seq sets standards for the disposal of such products as asbestos. The enforcement of these regulations which have the force of law takes many forms, some of which apply after the fact. Let us assume a simple fact. Suppose the material, instead of being asbestos, was broken masonry and other debris? It could not have been disposed of by dumping in the street or in public places. There are specific ordinances against such action, and relegating the matter to specific disposal areas and must be disposed of in compliance with the laws and ordinances of *1029 the locality. The fact that the disposal of "abatement" of asbestos is apparently considerably more expensive does not exclude this expense from coverage of the policy.
P [sic] The supervisor, Mr. Bizette, testified that the company would pay for the removal but not the abatement of asbestos. The removal of debris certainly includes disposing of it.
Compliance is not enforcement.
"Insurance policies are liberally construed in favor of coverage, and exceptions to coverage are strictly construed against the insurer." Capital Bank & Trust Co. v. Equitable Life, 542 So.2d 494, 496 (La.1989). La. Civ.Code art.2056. The burden was on Audubon to prove its entitlement to this exclusion. Dubois, 670 So.2d 258. As the trial court correctly found, it was the vandalism that caused damage to the Haas' building, not the enforcement of any ordinance or law. The costs of asbestos abatement were necessary because of the flooding which arose out of the vandalism to the building. The trial court correctly held Audubon responsible for these costs.
This assignment of error is without merit.

PENALTIES AND ATTORNEY'S FEES
Audubon contends that its interpretation of the insurance policy was reasonable, and therefore, not arbitrary and capricious as to require the imposition of penalties and attorney's fees and that because the issues in the case sub judice are res nova in Louisiana, it should not have been assessed penalties and attorney's fees.
Concerning penalties and attorneys fees the trial court opined:
The decision to deny the claims under this policy was made at the supervisory level of the Insurer's adjustment system. This decision was arbitrary and capricious. The defendant is entitled to a penalty of 10% of the amount of the claim and attorneys fees which are fixed at $24,850.52.
The trial court's decision regarding the award of penalties and attorneys' fees under La.R.S. 22:658 is partly a factual determination. It will not be disturbed unless manifestly erroneous. Stewart v. La. Farm Bureau Mut. Ins. Co., 420 So.2d 1217 (La.App. 3 Cir.1982); Holland v. Golden Rule Ins. Co., 96-264 (La.App.3 Cir. 10/9/96); 688 So.2d 1186. In the instant case, Audubon made erroneous interpretations of its policy. Even assuming that the issues were res nova, it is abundantly clear to any impartial reader of the vandalism provisions of the policy that the theft exclusion was patently ambiguous. Given that it is well known within the insurance industry that ambiguities in insurance policies will be construed against the drafter of the contract and since Audubon drafted the contract, it certainly had constructive knowledge that Haas was entitled to coverage for the damages to the building. Yet, it denied same and put Haas through the expense and unnecessary delays of a lawsuit to enforce the contract. Concerning the asbestos claim, Audubon's attempt to defend itself based upon an exclusion not applicable is likewise additional evidence of bad faith.
Audubon knowingly took the risk of misinterpreting its policy. Holland, 688 So.2d 1186; Sanders v. Home Indem. Ins. Co., 594 So.2d 1345 (La.App. 3 Cir.), writ denied, 598 So.2d 377 (La.1992). A possible interpretation does not equate to a reasonable interpretation as the law requires. In this circumstance, the trial court was correct in finding that Audubon was sufficiently arbitrary and capricious in adjusting this claim to warrant the award of penalties and attorney's fees to Haas. This assignment of error is without merit.

EXPERT COSTS
It is unnecessary to address this issue in this opinion as it is the subject of a separate published opinion. See Haas v. Audubon Indem. Co., 98-566 (La.App. 3 Cir. 10/21/98); 722 So.2d 1020.

PENALTIES PURSUANT TO LA.R.S. 22:1220
In his petition, Haas requested penalties under La.R.S. 22:1220 and 22:658. The trial court awarded penalties for arbitrary and capricious handling of the claims under La. R.S. 22:658 but did not award penalties under La.R.S. 22:1220. Haas answered the appeal, seeking penalties under La.R.S. 22:1220.
*1030 It is clear from the record that Audubon's actions were in violation of La. R.S. 22:1220(B)(1) by "misrepresenting ... [the] insurance policy provisions relating to the coverages at issue" for the reasons discussed above. But, the record does not disclose any proof of actual damages caused by Audubon's actions in breaching La.R.S. 22:1220. However, we have held that proof of actual damages is not required for a court to award a claimant up to $5,000.00 in penalties pursuant to La.R.S. 22:1220(C) for an insurance company's breach of its duty of good faith and fair dealing in violation of La.R.S. 22:1220(A and B). Hall v. State Farm Mut. Auto. Ins. Co., 94-867 (La.App. 3 Cir. 5/31/95); 658 So.2d 204; Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co., 93-1611 (La.App. 3 Cir. 9/21/94); 643 So.2d 242. See also Estate of Robichaux v. Jackson Nat'l Life Ins. Co., 821 F.Supp. 429 (E.D.La.1993), affirmed, 20 F.3d 1169 (5th Cir.1994).
Accordingly, we award Haas $5,000.00 in penalties for Audubon's violation of La.R.S. 22:1220.

INCREASED ATTORNEY'S FEES
As the trial court properly awarded attorney's fees, Haas would be entitled to an increased award of attorney's fees "when the defendant appeals and obtains no relief and when the appeal has necessitated additional work on the part of plaintiff's counsel, provided that plaintiff has requested the increase in accordance with the proper appellate procedure." Carbon v. Allstate Ins. Co., 96-2109 (La.App. 1 Cir 9/23/97); 701 So.2d 462, 474, writ granted, 97-3085 (La.3/27/98), 716 So.2d 365.
Haas properly requested an increase in attorney's fees in a timely answer to the appeal. Considering the complexity of this case and its extensive brief, we award an increase in attorney's fees to Haas in the amount of $5,000.00 for this appeal.

CONCLUSION
The trial court did not err in finding the theft exclusions and the enforcement of any ordinance or law exclusion of the insurance contract inapplicable to the damages sustained to the building in which Haas owned a one-half interest. The trial court's decision is affirmed. We modify the judgment to award Haas increased attorney's fees of $5,000.00 for this appeal. Haas' claim for penalties under La.R.S. 22:1220 is granted in the amount of $5,000.00. Audubon is cast for all costs of this appeal.
AFFIRMED.