GULOTTA, Judge.
Suit was filed by Mrs. Samelia I. Miller as executrix of the Estate of Norman N. Miller against defendant American Casualty Company for disability benefits accruing to Mr. Miller as an employee of Louisiana and Southern Life Insurance Company under a group disability policy provided by the employer. The trial court rendered judgment dismissing plaintiff’s suit, and from this adverse judgment, plaintiff appeals.
The uncontradicted facts show that Mr. Miller had spent his career in the insurance business, and that his last position prior to the present employment was with Kenesaw Life Insurance Company, Atlanta, Georgia, with which he was a vice-president in charge of the special risk division. In September, 1965, he gave up that position to accept employment with Louisiana and Southern Life Insurance Company at New Orleans in October, 1965. He was originally assigned to the special services department, special risk division which rated substandard life insurance, and was an assistant vice-president. He was promoted to a vice-president on April 18, 1967, and in October, 1967, this department was abolished and Mr. Miller was made vice-president in charge of the field services department. This was a change in function for him and his new position required him to handle with full authority the policy placement department, and to act as liaison between the field agency and all other departments.
During the period he was employed, he was covered under a group insurance policy issued by American Casualty Company, which was later changed to the Continental Casualty Company, and it is stipulated that Continental Casualty Company is the actual defendant in this case.
Mr. Miller was discharged from his employment on February 5, 1968. He died at the age of 63 years on January 10, 1969, about 11 months after his employment was terminated, of chronic pulmonary fibrosis, a condition which he had had for a number of years and which is the basis for seeking recovery in this suit.
It is plaintiff’s contention that Mr. Miller was totally disabled within the coverage of the disability policy during his employment with the Louisiana and Southern Life Insurance Company, at the time of his discharge, and thus is entitled to recover disability benefits up to the time of his death, together with penalties and attorney’s fees. As opposed to this, the defendant insurance company contends that Mr. Miller was not certified as being disabled until February 26, 1968, and that there was no coverage under the policy, because it expired at his discharge on February 5, 1968. Additionally, it contends that Mr. Miller was not in fact totally disabled, because he continued to perform each and all of the material duties pertaining to his occupation.
In view of the conflicting contentions stated above, it is necessary that we first establish the time of disability, when the basic cause is an illness which has caused gradual but certain impairment of the decedent’s physical functions.
The defendant insurance company insists, without admitting that there was disability, that the certification by the doctor as to disability was on February 26, 1968, several weeks after the employee was discharged. It, therefore, contends that by reference to the policy provisions, a disability arising after the termination of the policy is not within policy coverage. The company relies upon the following provisions of the policy: (P- 1)
“ ‘Sickness’ wherever used in this policy means sickness or disease causing loss commencing while this policy is in force *400 as to the Insured Employee whose sickness is the basis of claim.”
(Conditions for Payment — p. 7)
“A period of disability for which coverage is provided below must commence within thirty days of an accident or, if due to sickness, while coverage is in force as to the Insured Employee. * * * ”
(Individual Terminations- — p. 2)
“The insurance of any Insured Employee shall immediately terminate on the earliest of the following dates: * * * (2) On the date the Insured Employee leaves or is dismissed from the employment of the Employer or is retired or pensioned ; * * * ”.
It is clear then that the disability covered by the policy must commence while coverage is in force, that is, on or before February 5, 1968. If it is determined that disability did exist on or prior to the date, the policy benefits would continue in effect. We refer to the following clause in the Conditions for Payment:
“Termination of the policy or of an Insured Employee’s coverage for any reason shall be without prejudice to any claim originating prior to the date of termination.”
We now direct ourselves to the determination of disability within that period. The policy contains the following definition:
“ ‘Total Disability’ means the continu-uous inability of the Insured Employee to engage in each and every occupation or employment for wage or profit for which he is reasonably qualified by education, training or experience; however, during the applicable Elimination Period and the first 104 weeks thereafter the Insured Employee shall be deemed totally disabled while he is (1) unable to perform each and all the material duties pertaining to his occupation, and (2) not engaged in any occupation or employment for wage or profit for which he is reasonably qualified by education, training or experience.
“ ‘His occupation’ means any and every occupation or employment engaged in by the Insured Employee immediately prior to the date of the commencement of any loss covered hereunder.”
Our courts have always given a very reasonable and liberal interpretation to the term “total disability”, and have consistently held that the construction to be applied to such policy provisions amounts to a requirement that the employee’s disability be such as to render him unable to substantially perform all of the material acts of his business or occupation in the usual and customary way. Rambin v. Continental Casualty Company, 186 So.2d 861 (La.App.2nd Cir. 1966).
In interpreting a similar policy provision in the recent case of Scalia v. Travelers Insurance Company, 210 So.2d 373, at page 374 (La.App.2nd Cir. 1968), the court said:
“In construing similar language of insurance contracts, a uniform rule has been adopted to the effect that total disability as contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness but contemplates inability to do substantially all the material acts necessary to the prosecution of the insured’s business or occupation in substantially his usual and customary manner.” (Citing numerous cases).
The trial judge in this case made no specific findings of fact. However, we believe the following to be a fair appraisal of the evidence presented on the question of disability. Mr. Miller had been treated by doctors in Georgia and Alabama previous to his employment with Louisiana and Southern Life Insurance Company, and had been attended by Dr. Meyer Kaplan from November 4, 1966, to July 12, 1968, while he was in New Orleans.
At the time of his discharge, it was the opinion of Dr. Kaplan that Mr. Miller was medically disabled and probably un *401 employable in any other capacity since 1967. He testified that he certified Mr. Miller as disabled on the date of February 26, 1968, simply because that was the date that Mr. Miller came into his office asking to be certified.
According to the testimony of Dr. Kap-lan, Miller was in no different or worse physical condition on February 26, 1968, than when he last saw him in 1967.[1]
The evidence shows that despite this disease, which became progressively worse, the decedent continued to report to work. The record reflects that Mr. Miller was brought into employment with Louisiana and Southern because of his knowledge and experience, in order to assist in setting up the special risk division of that company.
Merely because Miller physically reported to his place of employment, however, does not preclude a determination that he was totally disabled. This is only one fact to be considered in determining the question of total disability. To place much weight on the fact that Miller physically reported to his office would be error as plaintiff would then actually be penalized for Miller’s overzealousness.
The president of the company where Miller was employed, Jack J. Reynolds, testified that Miller was discharged on February S because of inability to perform his assigned ditties. The notation on the discharge reads, “Failure to properly perform assigned duties”. Mrs. Miller corroborated that her husband went to work only under extreme difficulty. It was necessary for her to take him and to pick him up. He was unable to get into a taxicab toward the end. She further testified he could walk upstairs only one time a day. Miller’s secretary said that he had mental difficulty in accepting the new position from October, 1967, to the date of his discharge.
Because of the nature and history of Miller’s illness[2] dating back five or six years, it is obvious from the record that if he were not any different physically in late 1967 than when certified on February 26, 1968, he was totally disabled on February 5, 1968, 21 days earlier.
We recognize the well established principle that the conclusions reached by the trial court should be given great weight absent a finding of manifest error. However, in our opinion, the record amply reflects that Miller was totally disabled at the time of his discharge on February 5, 1968, and plaintiff is, therefore, entitled to recover under the terms of the policy.
We must deny plaintiff’s claim for penalties and attorneys’ fees under LSA-R.S. 22:657. The test for awarding penalties and attorneys’ fees is whether the insurer withheld payment of the claim more than 30 days without just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard. See: LSA-R.S. 22:657; Songe v. Tennessee Life Insurance Company, 260 So.2d 149 (La.App. 4th Cir. 1972). We are of the opinion that the action of the insurer in withholding payments could not be adjudged to be unreasonable. There was a valid issue of whether Miller was totally disabled. Moreover, the trial judge found it was not only reasonable to withhold payment, but proper. We, therefore, find no basis for awarding penalties and attorneys’ fees, in this instance.
Accordingly, the judgment of the trial court is reversed. Judgment is now ordered in favor of plaintiff in the sum of $5,111.04 [3] for disability benefits due under *402 the policy,[4] together with interest, from date of judicial demand. Costs to be paid by defendant-appellee.
Reversed and rendered.

. Dr. Kaplan testified that he attended Miller professionally for a fee in his office on 1/23/67, 2/18/67, 9/15/67, 2/26/68, 4/25/68, 7/8/68, and 7/12/68.

. Dr. Kaplan described the illness as progressive and crippling which led to Miller’s death on January 10, 1969, eleven months after his discharge.

.Defendant in brief agrees with plaintiff’s computation of the amount of benefits to which Miller would have been entitled had he been eligible under the insurance contract.

. The policy fixed benefits at 66%% of the employee’s salary up to age 65 (subject to a maximum of $250.00 a week) less any amount received as Social Security benefits. It contained an initial limitation period of 90 days during which no benefits are payable.
Ninety days after February 5, 1968, makes the disability benefits first due on May 5, 1968. Since Miller had an annual salary of $16,000 — a monthly salary of $1,333.33 — he was to receive 66%% of that (or $888.88 per month) less his Social Security of $250.00 a month or a net sum of $638.88 ($888.88 minus $250.-00) from May 5, 1968, to date of death, January 10, 1969. This represents approximately eight months and a total of $5,111.04 (or $638.88 x 8).