PER CURIAM.
After a thorough review and evaluation of the record, we are convinced the evidence supports the facts found and the reasons assigned by the trial court.[1] Accordingly, we affirm the judgment of the trial court, adopting its reasons as our own.[2] All costs are to be paid by the defendant.
AFFIRMED.
*375 23rd Judicial District Court State of Louisiana Parish of Ascension
Doyle F. Phillippe v. Commercial Insurance Company of Newark, New Jersey
No. 39809
FILED: April 5, 1989
/s/ Concetta Deneno by CLERK OF COURT
REASONS FOR JUDGMENT
I. BACKGROUND
This is an action on a policy of disability insurance issued to Doyle F. Phillippe by Commercial Insurance Company of Newark, New Jersey (Commercial). Mr. Phil-lippe’s petition alleged that in about 1974 he purchased a policy of disability insurance from Commercial which provided for lifetime payments to him in the event he was wholly and continuously disabled from performing the duties of any gainful occupation for which he was reasonably qualified. Mr. Phillippe asserted that his sole qualification for employment was as a dentist, and that an accident involving his right hand had rendered his practice of dentistry impossible. For some ten years prior to March 16, 1986, Commercial paid weekly benefits to him. It ceased payments on that date. Mr. Phillippe alleged that Commercial terminated his benefits arbitrarily and capriciously, without conducting any investigation into his ability to perform any gainful occupation. He prayed for judgment ordering Commercial to pay weekly benefits to him of $500.00 per week from March 16, 1986 to date of trial, declaring him to be disabled within the meaning of Commercial’s policy, and for statutory penalties and attorney’s fees against Commercial.
Commercial admitted in its answer that it issued a policy of disability insurance to Mr. Phillippe, but asserted that the relevant provisions, terms and exclusions of the policy limited its liability to the 520 weeks of benefits which it paid to Mr. Phillippe prior to March 16, 1986.
The parties stipulated that Commercial paid Mr. Phillippe disability benefits of $500.00 per week for a period of ten years commencing in February of 1976 and terminating in March of 1986. They also stipulated that Dr. Phillippe can no longer practice dentistry in the same manner as he had prior to losing his right thumb in an accident in February of 1976.
II. APPLICABLE POLICY PROVISIONS
The policy of insurance issued to Dr. Phillippe by Commercial was introduced into the record as Plaintiff’s Exhibit 1. The pertinent disability provision is set forth therein as follows:
“ACCIDENT INDEMNITY FOR TOTAL LOSS OF TIME
PART II.
If such injury shall within one year from date of accident wholly and continuously disable and prevent the Insured from performing every duty pertaining to his occupation and if the Insured be regularly attended by a legally qualified physician or surgeon, other than himself, the Company will pay the weekly indemnity for the number of days commencing with the first day of disability following the Waiting Period Accident stated in the application, but for a period not exceeding Maximum Accident Indemnity Period, as stated in the application. If the Maximum Accident Indemnity Period stated in the application exceeds five hundred and twenty weeks after the payment of the weekly indemnity for five hundred and twenty weeks as aforesaid, the Company will continue the payment of weekly indemnity so long as the Insured shall live and be wholly and continuously disabled by reason of such injury from performing the duties of any gainful occupation for which he is reasonably fitted.”
These accident indemnity provisions were superceded by an Extended Accident and Sickness Rider attached to the policy, *376 which made the following language controlling:
“ACCIDENT INDEMNITY FOR TOTAL LOSS OF TIME
PART II.
If such injury shall within one year from date of accident wholly and continuously disable and prevent the Insured from performing every duty pertaining to his occupation and if the Insured be regularly attended by a legally qualified physician or surgeon, other than himself, the Company will pay the weekly indemnity for the number of days commencing with the first day of disability following the Waiting Period Accident stated in the application, but for a period not exceeding Maximum Accident Indemnity Period, as stated in the application. If the Maximum Accident Indemnity Period stated in the application exceeds five hundred and twenty weeks after the payments of the weekly indemnity for five hundred and twenty weeks as aforesaid, the Company will continue the payment of weekly indemnity so long as the Insured shall live and be wholly and continuously disabled by reason of such injury from performing the duties of any gainful occupation for which he is reasonably fitted.”
The language of the policy thus provided that in the event an insured were disabled from performing his customary occupation at the time of his injury, Commercial obligated itself to pay weekly benefits for a maximum of five hundred and twenty (520) weeks, at which time Commercial’s obligation would continue only so long as the insured was unable to perform the duties of “any gainful obligation [sic] for which he is reasonably fitted” (emphasis added).
III. RELEVANCE OF DR. PHILLIPPE’S ABILITY TO ENGAGE IN OTHER GAINFUL ACTIVITY
Dr. Phillippe asserted that evidence of occupations for which he may be suited other than the practice of general dentistry is irrelevant to the determination of this matter, in light of Louisiana jurisprudence regarding policy provisions such as the one contained in the Commercial policy. It is his position that the specific language of the Commercial policy is superceded by a succinct line of Louisiana jurisprudence which holds that in interpreting disability policies, the insured may be denied benefits only if it is found that he can perform substantially the duties of his usual and customary occupation at the time of his injury. Dr. Phillippe thus contends that ability to engage in a new occupation is of no moment, regardless of the language which may be contained in his policy. The plaintiff cited a number of cases in support of this position.
In Foret v. Aetna Life and Casualty Company, 337 So.2d 676 (App. 3rd Cir., 1976), Mr. Foret contended that he was unable to perform the duties of his prior occupation as a roustabout or any gainful occupation due to constant abdominal pain. Aetna, the group disability insurer of Mr. Foret’s employer, asserted that he was capable of returning to his former occupation. The medical testimony presented clearly favored the plaintiff’s contention that he could not work as a roustabout. The Aetna policy provision regarding total disability read as follows:
‘Article II-Section 1(f):
“ ‘Reasonable occupation’ means any gainful activity for which the employee is, or may reasonably become, fitted by education, training or experience, but shall not mean any such activity if it is in connection with an approved rehabilitation program.”
Article II-Section 1(g):
“ ‘Total disability’ or ‘totally disabled’ means, during the first twenty-four months of any one period of disability, that the employee is unable, solely because of disease or accidental bodily injury, to work at his own occupation; and, thereafter during the continuance of such period of disability, that the employee is unable, solely because of disease or accidental bodily injury, to work at any reasonable occupation. ” ’ (Emphasis added).
*377 Aetna’s policy thus provided that for two years, the plaintiffs ability to perform his own occupation governed his entitlement to benefits; and that thereafter only his inability to work at any reasonable occupation would entitle him to continued benefits. The Third Circuit found that although the trial court did not expressly address the separate tests for disability within these distinct time periods in finding Mr. Foret to be totally disabled, its failure to do so was not erroneous when considered in light of Louisiana jurisprudence on the issue. The Court stated, at p. 682:
“Our courts have adopted a policy of liberal interpretation respecting accident insurance policies which provide benefits for total permanent disability, or the inability to engage in any occupation for compensation or profit. Crowe v. Equitable Life Assur. Soc. of United States, 179 La. 444, 154 So. 52 (La.1954). Policy provisions similar to those above referred to have consistently been construed to mean the insured will be denied benefits only when he can perform substantial and material duties of his occupation in the usual and customary manner. That the insured may engage in some other occupation does not disqualify him insofar as concerns policies of this character.”
However, this court finds the following language to indicate a significant distinguishing factor between Foret and the instant matter:
“The plaintiff, who has only an 11th grade education with no special training or skills, is not fitted by training or experience for any type work except manual labor. As aforestated we find no manifest error in the trial court’s conclusion that by reason of plaintiff’s physical condition he has been, since October 16, 1971, unable to perform heavy manual labor such as that required by a roughneck or roustabout. Under these circumstances, when the policy provisions in question are construed in light of the jurisprudence we have no hesitancy in concluding that plaintiff has established his “total disability” within the meaning of the policy for an indeterminate period beyond the initial twenty-four month period.” {Foret, page 682).
The court’s appreciation of this finding is that under the facts peculiar to Foret, where the insured was clearly fit only for manual labor and could not perform his usual occupation, i.e., manual labor, he was of course unable to perform any other. Thus, no error could be found in the trial court’s failure to specifically direct its attention to a two-tiered level of examination of Mr. Foret’s capacity to engage in gainful activity.
Cannon v. Ormet Corp., 479 So.2d 555 (La.App. 1st Cir., 1985), writ denied 483 So.2d 1023; is, in the court’s opinion, also distinguishable from the instant matter. That court’s finding was that disability definitions requiring complete inability to perform any and every duty of his occupation will be and have been reinterpreted to require only that an insured be rendered unable to perform the “substantial and material acts of his business or occupation in the usual and customary way”. Cannon, p. 561. The Cannon court in fact specifically referred to Foret in stating that “the initial definition of total disability shall be construed to mean that the insured will be denied benefits only when he can perform substantial and material duties of his occupation in the usual and customary manner”. (Emphasis added, Cannon, p. 562).
Miller v. American Casualty Company, 263 So.2d 398 (La.App. 4th Cir., 1972), is also distinguishable, as it addressed itself to initial disability determination. The Supreme Court did not specifically address the issue presented herein in Laborde v. Employers Life Insurance Company, 412 So. 2d 1301 (La.1982).
The court finds itself to be compelled to agree with Commercial’s contention that it is entitled to a two-tiered examination of the disability provisions of its policy. The cited jurisprudence basically relates to the initial determination of whether Dr. Phil-lippe was rendered incapable of performing his usual duties as a practicing dentist by the loss of his thumb. The parties have stipulated that he was. As a result, he was *378 paid weekly benefits for ten years in accordance with the policy provisions. The terms of the policy clearly and unambiguously stated that after this initial 520 week period, benefits would continue only if he remained unable to pursue any gainful occupation for which he is reasonably fitted.
A contract of insurance is the law between the parties. Southern States Masonry v. Mission Insurance Company, 353 So.2d 307 (La.App. 1st Cir., 1977), writ denied 354 So.2d 1376 (1978). Each provision which is clear and unambiguous must be given its full effect. In the court’s opinion, the definition to be given to the term “total disability” for purposes of making an initial determination of entitlement to benefits is not the issue in this matter. The cited jurisprudence does not address the question of whether, after paying benefits for a period of ten years, an insurer may rely upon policy provisions which in effect redefine “total disability” at that point to cease paying benefits. The primary public policies and concerns which presented themselves in the cited jurisprudence are simply not present under such circumstances. Considering all of these factors, the court finds that Commercial was entitled to present evidence of Dr. Phillippe’s ability to engage in any gainful occupation for which his education and training rendered him fit at the trial of this matter, which must be given due consideration.
IV. EVIDENCE PRESENTED
A) Dr. Phillippe
Dr. Doyle Phillippe testified that he was 55 years of age at the time of the trial of this matter, and that his education and training consisted solely of completion of the requirements for the practice of dentistry. Dr. Phillippe also stated that he has not actively practiced dentistry for over ten years as a result of the loss of his thumb. He practiced for approximately 15 years prior to his injury.
Dr. Phillippe acknowledged that he has engaged in real estate investments in the past, even prior to his accident. Those activities related to the development of a mobile home park, a rental property, and a small office building. Between 1978 and 1983 Dr. Phillippe acquired, developed and sold a small shopping center in Gonzales, Louisiana.
In addition to the above activities, Dr. Phillippe also testified that he has invested in computer and construction equipment. Finally, he acknowledged that for a brief time after his injury, he was employed as a contract dental consultant for the State of Louisiana.
In conjunction with Dr. Phillippe’s testimony, a number of documentary exhibits were introduced into evidence. Exhibit P-2 was a copy of the last indemnity check sent to Dr. Phillippe by Commercial. That document indicates that it represented payment of the final three weeks of benefits payable under the terms of the policy. It further indicated that Dr. Phillippe’s case file was considered to be closed by Commercial, and stated that the “maximum of ten years or 520 weeks” had been “paid per policy”. The plaintiff’s exhibit number “3” was a copy of a letter to Dr. Phillippe dated April 2, 1986 signed by Mrs. Maxie C. Me-lancon, Claims Supervisor. This document also makes reference to the fact that payments to Dr. Phillippe were terminated due to the maximum benefits of ten years having been paid. Exhibits P-“5” and P-“6” were photographs of Dr. Phillippe’s right hand. They reveal the total lack of a thumb on that appendage. The index finger terminates at the last knuckle.
B) Robert Porche
Mr. Porche testified on behalf of Commercial as an expert in vocational rehabilitation. Mr. Porche expressed the opinion that Dr. Phillippe’s education and experience qualified him for a number of occupations, which are ... Mr. Porche felt that Dr. Phillippe’s medical training qualifies him for work in pharmaceutical sales, dental supply sales, and insurance sales. It was also Mr. Porche’s opinion that Dr. Phil-lippe’s investment experience qualified him to work as a real estate investor or developer, building consultant or resident leasing agent. He also felt that Dr. Phillippe *379 could retrain himself in the field of oral pathology.
Under cross examination, Mr. Porche detailed the means by which he arrived at his conclusions regarding occupations for which he found Dr. Phillippe to be qualified. Mr. Porche testified that after gathering factual information about Dr. Phil-lippe’s past education and experience, the pertinent information was compared with the requirements of a number of potential occupations and a list of occupations computable with his education and experience was thus produced.
C) Dr. Paul Ware
Dr. Ware testified by deposition on behalf of Dr. Phillippe, as an expert in the field of psychiatry. Dr. Ware’s particular area of expertise is forensic psychiatry and neurology as they apply to the law. Dr. Ware met with Dr. Phillippe on January 4, 1978. At that time he diagnosed Dr. Phil-lippe as a man suffering from chronic depression and compulsive personality disorders, which he attributed to the loss of Dr. Phillippe’s ability to practice dentistry.
Dr. Ware again examined Dr. Phillippe on August 30, 1988, for the purpose of performing a psychiatric evaluation.
Dr. Ware’s opinion was that Dr. Phillippe was not a candidate for retraining for another occupation, due to his age, work background, and personality. It was Dr. Ware’s opinion that his personality is not compatible with the type of personality normally associated with a salesman of any type.
Under cross examination, Dr. Ware testified that at the time of his second examination, Dr. Phillippe did not exhibit symptoms of depression, and was psychologically sound, in his opinion. He found Dr. Phil-lippe to be intelligent and capable of sound assessment and evaluation of situations.
D) Exhibits Introduced by Commercial
The first ten exhibits offered by the defendant were Dr. Phillippe’s income tax returns for the years 1977 through 1986.
They indicate that in 1977, Dr. Phillippe’s income was earned through interest earnings, dental office rental, rental of a commercial building, and trailer park rental income. In 1978, he received income as a dental consultant for the State of Louisiana, of $7,750.00, and engaged in the development of Oak Terrace Plaza Shopping Center in Gonzales. He also apparently operated a jewelry and gift shop for some time during this ten year period. Dr. Phil-lippe also invested in several other areas during this time, notably in equipment and rental activities.
Dr. Phillippe’s L.S.U. and Loyola School of Dentistry transcripts were also placed into evidence by the defendants.
V. FINDINGS OF FACT
The court makes the following findings of fact based upon the evidence presented:
Dr. Doyle F. Phillippe, at the time of his accident in 1976, had practiced general dentistry for some 15 years. His educational background and training was as a dentist. Subsequent to the loss of his right thumb in a hunting accident, he was rendered incapable of practicing general dentistry. Dr. Phillippe’s income related activities between 1976 and the date of trial consisted of a brief stint as a dental consultant for the State of Louisiana, real estate investment and rental, and equipment rental. The court accepts as fact Dr. Ware’s testimony regarding Dr. Phillippe’s inability to work in the area of sales due to his personality type. Mr. Porche’s assertion that Dr. Phillippe’s past purchase and development of land evidences ability to “sell” is at best tenuous. With regard to his opinion that Dr. Phillippe could with additional training, become an oral pathologist, the court cannot and will not find that Dr. Phillippe has a duty to undertake such a labor. No provision of the Commercial policy was ever shown to require such action on the part of Dr. Phillippe. In fact, the conduct of Commercial with regard to the entire issue of total disability forces the court to realize the inherent inequity of considering the two tiered analysis of disability set *380 forth in the policy. It is difficult to conceive of any activity in which an individual could engage which could not be contrived to translate into a gainful occupation which disqualifies him from receipt of disability benefits. The manner in which Mr. Porche arrived at his conclusions bears ample proof of that fact. He essentially fed into a computer the facts of Dr. Phillippe’s past which he chose to rely upon, and received an impressive list of occupations for which Dr. Phillippe was qualified in return. The alternative, for Dr. Phillippe, was to remain absolutely motionless for the remainder of his life, lest he engage in some activity which “qualified” him for an occupation. The court must find that Commercial has failed to establish by a preponderance of the evidence any occupation for which Dr. Phillippe’s training and experience reasonably qualify him. The evidentiary basis for each and every occupation set forth by Mr. Porche is some fact of Dr. Phillippe’s past work and investment history, which was applied to a chart of possible occupations without regard to whether Dr. Phillippe was in fact capable of carrying out the duties entailed in such occupations, or the current economic feasibility of these occupations in the area in which Dr. Phillippe lives. In the court’s opinion, such testimony is of very little evidentiary value.
The court finds Dr. Phillippe to be totally disabled as that term is defined within the Commercial policy. Accordingly, he is entitled past due benefits and judicial interest thereon from date of demand in the case of those benefits accruing prior to his filing of suit, and thereafter on each payment from the date each payment was due until they are paid. He is further entitled to the declaratory relief prayed for.
VI. PLAINTIFFS ENTITLEMENT TO PENALTIES AND ATTORNEY’S FEES
The court must deny the plaintiff’s request for punitive damages and attorney’s fees, in spite of the fact that it finds the conduct of Commercial to have been less than admirable in this matter. Having bound itself to continue to pay benefits to Dr. Phillippe for life in the event he remained totally disabled, Commercial certainly owed him a duty to undertake a reasonable investigation of his ability to engage in other gainful activity prior to ceasing payment of benefits. The evidence presented indicated that Commercial fell short in discharging that duty. Finally, the amount which Commercial may have paid Dr. Phillippe in the past is totally irrelevant to the determination of what they may owe him in the future. Having contracted for disability indemnity and accepted premiums for the same, Commercial bound itself to pay whatever sum Dr. Phillippe’s disability entitled him to.
Nevertheless, the defendant was entitled to a judicial determination of what were in fact substantial legal and factual questions regarding the applicable provisions of its policy of insurance. The court cannot find Commercial’s factual and legal defenses to be correct; however, their reasonableness under the circumstances of this matter are not seriously subject to question. The plaintiff’s demands for penalties and attorney’s fees is therefore dismissed. See Landry v. La. Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir., 1984).
VII. CONCLUSION
For these reasons, the Court grants judgment in favor of the plaintiff, Dr. Doyle F. Phillippe, and against the defendant, Commercial Insurancé Company of Newark, New Jersey, as follows:
a) Dr. Doyle F. Phillippe is granted a declaratory judgment finding him to be totally disabled within the intent and meaning of the policy of disability insurance issued to him by Commercial and Commercial is ordered to pay such benefits as may hereafter accrue thereunder;
b) Dr. Phillippe is granted judgment for past benefits due of $500.00 per week for the period of time commencing on March 15, 1986, and continuing until the date of signing of a formal judgment; together with legal interest from August 28, 1987 until paid on those weekly benefits due for the period of time commencing on March 15, *381 1986 and terminating on August 28, 1987; and legal interest on weekly benefits coming due between August 28, 1987 and the date of formal judgment from the date each weekly benefit payment became due until paid.
c) Commercial is cast for all costs of this matter.
Counsel for Dr. Phillippe shall prepare a judgment in conformity herewith, which will be executed upon its presentation to the court.
SO RENDERED, at Napoleonville, Louisiana, this 4th day of April, 1989.
/s/ Leon J. LeSueur JUDGE

. In quoting the provisions of the original accident indemnity clause, the trial court incorrectly stated that the original clause provided for a maximum indemnity period of 520 weeks. The original clause actually provided for a maximum period of 260 weeks. Later, that period was increased to a maximum of 520 weeks.

. In his answer to the appeal, plaintiff sought attorney fees for prosecuting his answer on appeal. Plaintiff is not entitled to an award of attorney fees on appeal because he also sought a reversal of the trial court’s denial of his request for penalties and attorney fees. See Bischoff v. Old Southern Life Ins. Co., 502 So.2d 181 (La.App. 3d Cir.1987).